STATE of Missouri, Respondent,

v.

David L. PENDERGRASS, Appellant.

No. 18647.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 31, 1994.

Wayne P. Strothmann, Clinton, for appellant.

Michael C. Dawson, Pros. Atty. of St. Clair County, Osceola, for respondent.

Jane A. Smith, Jefferson City, for amicus curiae Conservation Com'n of MO.

CROW, Judge.

Hearing the evidence without a jury, the trial court found Defendant, David L. Pendergrass, guilty of "fishing without a valid fishing permit" and levied a $500 fine. Defendant appeals, presenting three points relied on: (1) the information was insufficient; (2) there was no substantial evidence that he lacked the requisite permit; (3) there was no substantial evidence that he was "fishing."

The trial court's findings have the force and effect of a jury verdict. Rule 27.01(b), Missouri Rules of Criminal Procedure (1993); *State v. Giffin,* 640 S.W.2d 128, 130[1] (Mo.1982); *State v. Wilson,* 846 S.W.2d 796, 796–97[1] (Mo.App.S.D.1993). In determining the sufficiency of the evidence, we accept as true all evidence tending to prove guilt, together with inferences favorable to the State that can be reasonably drawn therefrom, and disregard all contrary evidence and inferences. *Giffin,* 640 S.W.2d at 130[2]; *Wilson,* 846 S.W.2d at 796–97[2].

So viewed, the evidence establishes that on the morning of July 17, 1992, Allan Bayless, David Keene and Defendant were in a boat on Truman Lake in St. Clair County. Two agents of the Missouri Department of Conservation, Robert Vader and Brian Boyd, were in another boat on the lake. Asked why he was there, Vader testified: "To look for and watch David Pendergrass in any act of fishing."

Vader recounted that Defendant and Bayless were initially positioned in the stern of their boat. The third occupant, Keene, was in the bow.

According to Vader, there were "jug lines" in the lake. We seine from the record that such devices consist of jugs or bottles which float, to which are attached two lines, a "weight line" and a "bait line." A baited hook is fastened to the bait line. As we fathom it, jug lines are placed in the water and allowed to float freely. As a consequence, they "usually ... get caught up in brush and stuff like that."

The boat occupied by Defendant and his companions was propelled by a motor at the stern. Asked who was operating the boat, Vader testified: "At different times, Mr. Pendergrass was operating it.... Operating the throttle and moving the tiller handle back and forth.... The throttle is on the tiller handle. You twist it to accelerate the boat or to decelerate."

Vader and Boyd followed the boat occupied by Defendant and his mates. Vader explained: "[W]e ... watched them go from one jug to the other, and untangle them if necessary, rebait [sic] them if necessary, ...

take fish off if they [were] lucky enough to have caught one." Vader's testimony continued:

Q. ... What else did you see Mr. Pendergrass do besides just operate the boat?

A. Well, I observed Mr. Pendergrass also grab ahold of one of the jugs from the jug lines.

Q. What was the situation at that time?

A. ... They had caught a large fish.... And the young fellow had the line that had the fish on it, and he pulled the jug up and threw the jug to the back. At this time, Mr. Pendergrass was in the back of the boat, he grabbed ahold of the jug while the other, older gentleman took the other line that had the weight on it.

Agent Boyd, presented as a witness by the State, testified substantially the same as Vader regarding Defendant's operation of the boat. Boyd did not see Defendant handle a jug; however, Boyd did see Defendant handling lines. Boyd's cross-examination included this:

Q. Now, you aren't suggesting that ... I'm fishing if I'm operating a boat and somebody in the boat is fishing; are you?

A. If you're operating a boat for somebody that is fishing, you are fishing. You're assisting in the fishing.

The boat occupied by Defendant and his cohorts eventually returned to shore. As it did, Vader radioed other Conservation agents waiting there.

Agent John Hart of the Missouri Department of Conservation confronted Defendant as he came ashore. Hart identified himself and told Defendant he had been observed operating a boat while its other occupants were fishing. At trial, the following exchange occurred during Hart's testimony:

Q. ... did you have a conversation with [Defendant]?

A. Yes, I did.... I explained to him that he would need to have a fishing license if he did participate in this sport. And then I asked him if he had a fishing license.

Q. Okay. Did he have one?

A. And he said, no, he didn't have one and he couldn't have one.

[Defendant's lawyer]: Well, Your Honor, I'm going to object to any statements of the Defendant as not having been disclosed by discovery.

[Prosecutor]: Withdrawn.... Let me withdraw the last question, Your Honor.

Hart then testified he issued Defendant a "ticket" for fishing without a license.

Defendant presented one of his companions, Bayless, as a witness. Bayless' testimony included this:

Q. At any time, other than operating the boat, did Mr. Pendergrass do anything to engage in any fishing with you and Mr. Keene?

A. No.

. . . .

Q. ... why wasn't Mr. Pendergrass fishing?

A. He's not supposed to fish.

Q. Did he tell you that?

A. Yeah. I already knew it.

Q. Well, what, did he tell you he'd been suspended?

A. Yeah.

Q. Okay. And so, that's why he wasn't fishing?

A. Right.

Q. Because he couldn't get a fishing license?

A. I don't know if he could get one or not, but he—I think he's got one. He told me he had—got a fishing license.

Q. Okay. But he also told you he had been suspended?

A. Yeah. He said he'd been suspended.

At Defendant's behest, agent Hart returned to the witness stand. This exchange occurred:

Q. I'll hand you what has been marked as Defendant's Exhibit B and ask you if you can identify that.

A. It appears to be a 1992 resident fishing license issued to David Pendergrass, Route 1, Box 256A, Everton, Missouri.

Q. Issued when?

A. On the 1st and the 15th of '92.

Q. January the 15th of 1992?

A. That's correct.

The trial court received Defendant's Exhibit B in evidence. An enlargement of it is appended to this opinion.

The "ticket" issued to Defendant by agent Hart became the information when the prosecutor signed and swore to it. Excluding its formal portions, it alleges that Defendant, in violation of § 252.040, RSMo 1986, and two rules and regulations of the Missouri Conservation Commission, 3 CSR 10–5.216 and 3 CSR 10–6.305, did unlawfully "fish in the waters of the state while under suspension and revocation without a valid MO fishing permit."

Section 252.040, RSMo 1986, the statute cited in the information, reads:

No wildlife shall be pursued, taken, killed, possessed or disposed of except in the manner, to the extent and at the time or times permitted by such rules and regulations; and any pursuit, taking, killing, possession or disposition thereof, except as permitted by such rules and regulations, are hereby prohibited. Any person violating this section shall be guilty of a misdemeanor....

Section 252.020, RSMo 1986, reads, in pertinent part:

As used in sections 252.010 to 252.240, unless the context otherwise requires:

(1) The word **"commission"** shall mean and include the conservation commission as established by the Constitution of Missouri; and the words **"rules and regulations"** shall mean those made by said commission pursuant thereto;

(2) ....

(3) The word **"wildlife"** shall mean and include all ... fish ... regardless of classification, whether ... dead or alive....

3 CSR 10–5.216, one of the regulations cited in the information, reads, in pertinent part:

(1) The commission may suspend, revoke or deny a permit or privilege for cause....

3 CSR 10–6.305, the other regulation cited in the information, reads:

Any person, to exercise the privileges of fishing, must obtain and have on his/her person the prescribed permit or evidence of exemption.

We first address Defendant's second point. It asserts the evidence was insufficient to support the conviction in that "there was no substantial evidence that Pendergrass did not have the requisite Missouri fishing permit, and in fact the only evidence in that regard was that [he] did have a Missouri fishing permit."

■ As we construe the information, the State's theory of the offense was that Defendant lacked a fishing permit because his fishing privileges had been suspended or revoked per 3 CSR 10–5.216(1),[1] quoted *supra.* That regulation ostensibly authorizes the Conservation Commission to "suspend, revoke or deny" a "permit or privilege" for cause.

For the purpose of resolving Defendant's second point, we shall assume, without deciding, that if a person has a Missouri fishing permit, the Conservation Commission can suspend or revoke it for cause. We shall further assume, without deciding, that if a person has no Missouri fishing permit, the Conservation Commission can deny him one for cause. We shall further assume, without deciding, that if a person is among those who

---

1. The Missouri Conservation Commission, by its general counsel, filed an *amicus curiae* brief. Attached to the brief is a copy of a document purporting to be a letter from the Director of the Missouri Department of Conservation to Defendant informing him that his Missouri hunting and fishing privileges are "suspended" from July 12, 1991, through July 12, 1994. The brief does not direct us to any place in the record where the document was offered in evidence at trial, and we find no place where it was. An appellate court is limited to consideration of the evidence in the record; exhibits attached to a brief may not be used to assert facts on appeal. *State v. Phillips,* 596 S.W.2d 752, 755[4] n. 1 (Mo.App. E.D.1980); *State v. Atkins,* 549 S.W.2d 927, 930–31[8–9] (Mo.App.1977). Accordingly, we disregard the document and are astonished by the attempt to place it before us.

are exempt from the requirement of having a Missouri fishing permit in order to fish, the Conservation Commission can nonetheless, for cause, deny him the privilege of fishing.

The information here alleges Defendant was fishing "while under suspension and revocation." As we comprehend the transcript, the State undertook to prove that prior to July 17, 1992, the Conservation Commission had suspended—or revoked—or both—Defendant's fishing privileges, hence he was ineligible for a fishing permit, and any permit he may have purchased from an unwitting agent of the Department of Conservation was invalid.

The prosecutor asked agent Vader why he had Defendant under surveillance. When Defendant's lawyer registered a hearsay objection, the prosecutor stated he was offering the testimony to show only why Vader was there. The prosecutor added, "We're not using it for the truth of the matter asserted or the fact that David Pendergrass was actually suspended at that time." The trial court thereupon allowed Vader to testify he was watching Defendant because "he was suspended or revoked by the Department of Conservation."

The prosecutor also asked agent Boyd why he was watching Defendant. When Boyd attempted to answer that Defendant "was revoked at the time," Defendant's lawyer voiced a hearsay objection. Again, the prosecutor declared he was offering the testimony only to explain Boyd's conduct. The trial court ruled: "For that limited purpose, and not for the truth of the matter asserted, it is admissible. . . ."

As recounted earlier, the prosecutor asked agent Hart whether Defendant had a fishing license. When Hart undertook to quote Defendant as saying he "didn't have one and . . . couldn't have one," Defendant's lawyer objected because no statements by Defendant had been disclosed during discovery. Faced with that objection, the prosecutor withdrew the question.

The State offered no further evidence of suspension or revocation during its case-in-chief. Consequently, when the State rested, there was no competent evidence before the trial court that Defendant's fishing privileges had been suspended or revoked.

◼ Defendant moved for a judgment of acquittal, arguing there was no evidence he did not have a fishing permit and no evidence that his fishing privileges had been suspended or revoked. The trial court denied the motion, whereupon Defendant presented evidence. By doing so, Defendant waived any claim of error regarding the denial of his motion, even though this was a judge-tried case. *State v. Gooch*, 831 S.W.2d 277, 277[1] (Mo.App.S.D.1992); *State v. Ritterbach*, 627 S.W.2d 894, 896[1] (Mo.App.S.D.1982).

◼ The only evidence arguably showing suspension or revocation came during Defendant's case when his companion, Bayless, testified. As we have seen, Bayless quoted Defendant as saying he was not supposed to fish because he had been "suspended."

With respect to proof of suspension or revocation, the trial court found:

> The only evidence of a suspension or revocation which was admitted for the truth of that was the statement by Mr. Bayless in the form of an admission by Mr. Pendergrass to him that he was suspended.

Our study of the record confirms the trial court's evaluation of the evidence was correct. Accordingly, Defendant's second point hinges on whether his statement to Bayless that he (Defendant) had been "suspended" was sufficient to support a finding that (a) the Conservation Commission had suspended Defendant's fishing privileges prior to the date he allegedly fished, July 17, 1992, (b) the suspension was still in effect on that date, and (c) as a consequence, Defendant was ineligible for a fishing permit, thereby rendering invalid the permit bearing his name, received at trial as Defendant's Exhibit B and appended to this opinion.

The burden was on the State to prove Defendant guilty beyond a reasonable doubt. *State v. Howard*, 540 S.W.2d 86, 88[3] (Mo. banc 1976). The State must satisfy that burden as to each and every element of the offense. *State v. Clemons*, 643 S.W.2d 803, 805 (Mo. banc 1983).

Obviously, the best way to prove Defendant's fishing privileges had been suspended or revoked would be by presenting the record of an order to that effect promulgated by the Conservation Commission, properly identified by the custodian of the Commission's records. Alternatively, it might be possible to qualify such a record for admissibility under §§ 490.660–.690, RSMo 1986, and § 490.692, RSMo Cum.Supp.1992, thereby eliminating the need for an appearance by the records custodian at trial.

However, our task is not to determine the most effective way to prove suspension or revocation. Instead, the issue is whether Defendant's statement to Bayless was sufficient to satisfy the State's burden of proof.

We hold it was not. There was no evidence before the trial court as to the basis for Defendant's belief that he had been "suspended." His belief could have been based on something told him by a Conservation agent.

Conservation agents are not authorized by 3 CSR 10–5.216(1) to suspend someone's fishing privileges. That regulation vests such authority solely in the Conservation Commission. There was no competent evidence before the trial court that the suspension mentioned by Defendant to Bayless had been ordered by the Conservation Commission.

■ Furthermore, it appears from Defendant's Exhibit B that an "Issuing Agent" of the Department of Conservation issued Defendant a fishing permit January 15, 1992, valid until December 31, 1992. There was no evidence before the trial court that the permit was bogus, stolen, or issued by someone unauthorized to do so. There was likewise no evidence before the trial court that during the six-month interval between issuance of the permit and the date Defendant allegedly fished, the Conservation Commission made any effort to cancel the permit.

■ We hold the evidence before the trial court was insufficient to support a finding, beyond a reasonable doubt, that Defendant did not have a "valid fishing permit" on July 17, 1992. Accordingly, the judgment must be reversed and, because reversal is for evidentiary insufficiency, Defendant cannot be tried anew. *State v. Wood,* 596 S.W.2d 394, 398[1] (Mo. banc 1980), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980).

This holding makes it unnecessary to consider Defendant's first and third points.

We are not oblivious of the public interest served by protecting wildlife from poachers. However, the State must satisfy the same burden of proof in misdemeanor prosecutions for Wildlife Code violations as it does in all other criminal cases.

The judgment is reversed and Defendant is discharged.

PREWITT and GARRISON, JJ., concur.

APPENDIX

Defendant's Exhibit B

Name (Please Print) D Pendergrass
Address RR1 Box 256A
City Everton  State mo  Zip 65646
Date of Birth 4-25-40  Sex m
Hair Brown  Eyes Brown  Ht. 5'11"  Wt. 200
Telephone No. (417)

**DEPARTMENT OF CONSERVATION**
JERRY J. PRESLEY, Director
Accepted by:

Signature of Permittee

**92 E 206011**

**RESIDENT FISHING PERMIT**
expires Dec. 31, 1992

Permit Fee $8.00

Not valid until signed by permittee.
Permittee's signature attests to the acceptance of the Rules pertaining to this permit, and the conditions set forth on the reverse side; and certification of residency in Missouri.

Valid From Date of Issue

Issued 1-15 19 92 at 5:30 AM/PM

By Jane Collier
Collier Hardware
For Issuing Agent

VENDOR ACCT. # 056-016

**MISSOURI 1992**