**STATE of Missouri, Plaintiff–Respondent,**

v.

**Sean L. MYERS, Defendant–Appellant.**

**Sean L. Myers, Movant–Appellant,**

v.

**State of Missouri, Respondent–Respondent.**

**Nos. 19206, 22072.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 25, 1999.

Motion for Rehearing and Transfer
Denied June 18, 1999.

Application for Transfer Denied
Aug. 24, 1999.

Arthur S. Margulis, Linda Hogan, Margulis & Grant, P.C., St. Louis, for Appellant/Movant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Office of the Attorney General, Jefferson City, for Respondent/Respondent.

PAUL McGHEE, Senior Judge.

Sean L. Myers (defendant) was tried by jury as a prior offender in Camden County on change of venue from Laclede County. The jury found him guilty of the class B felony of assault in the first degree and armed criminal action in violation of sections 565.050 and 571.015, RSMo 1986. He was acquitted on a count of unlawful use of a weapon. After denying defendant's after-trial motions, the court sentenced him to concurrent terms of fifteen years on the assault count and fifty years on the armed criminal action count. He appeals from those convictions in Case No. 19206.

Defendant then filed postconviction motions pursuant to Rule 29.15. The motion court denied relief after an evidentiary hearing, and defendant appeals from that denial in Case No. 22072. As defendant was sentenced on November 20, 1993, the provisions of Rule 29.15 in effect when the postconviction motion was filed on March 3, 1995, govern these cases. Rule 29.15(m), Missouri Rules of Criminal Procedure. Rule 29.15($l$) then provided that a pending direct appeal should be suspended until final determination of the issues raised in the postconviction motion, and that the appeals should be consolidated. This court consolidated the cases, but addresses them separately in this opinion.

### Case No. 19206—Direct Appeal

The sufficiency of the evidence is not challenged, and we review for prejudice, not mere error. We will reverse only if an

error was so prejudicial that it deprived defendant of a fair trial. *State v. Hall*, 982 S.W.2d 675, 680[3] (Mo.banc 1998).

Shortly after midnight on January 31, 1991, with Sherrill Anthony in the front passenger seat, defendant stopped his Camaro automobile on an overpass over the westbound lanes of Interstate 44. He retrieved a rifle from behind the front seat and fired it at least ten times out the open window on his side to the east at the oncoming line of traffic. One of the bullets went through the windshield of a pickup truck, striking and injuring the driver.

The Lebanon police later impounded the Camaro and in making an inventory search they found defendant's operator's license, his jacket with twenty-six .22–caliber cartridges in a pocket, and an ammunition clip for a .22–caliber rifle.

Acting on information received from Lloyd Tabor, III ("Little Lloyd"), the son of Debbie and Lloyd Tabor, Jr. ("Big Lloyd"), investigating officers recovered parts of a .22–caliber rifle from a farm pond. Its serial number matched the serial number of a rifle that defendant's former stepbrother had given him to sell. Ten spent shell casings that had been found on the overpass were identified as having been fired by this rifle.

■ Defendant claimed to have been "framed" by Big Lloyd, his former employer, who had died of a heart attack the month before the trial. He testified as to acts of Big Lloyd, and others, that caused him to believe that he had been framed. When asked on cross-examination why he had not told "this story" before, the court sustained an objection to the question. He then was asked whether he had told the story to anyone associated with the investigation of the case before his testimony. His attorney objected on the ground that the prosecution was attempting to shift the burden of proof, but did not state constitutional grounds for the objection with requisite specificity. The court overruled the objection and the attorney did not ask for

any relief; nor did he make an offer of proof as to defendant's arrest or the giving of *Miranda* warnings. Defendant then replied that he had not told anyone. He now asserts that his due process rights and his privilege against self-incrimination were violated by the ruling on this objection.

■ The State may not use a defendant's postarrest silence, following the receipt of *Miranda* warnings, as either substantive evidence of guilt or for impeachment. *State v. Ogle*, 967 S.W.2d 710, 712 (Mo.App. S.D.1998). However, in the absence of *Miranda* warnings, it does not violate due process of law to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982).

■ The State may use a defendant's immediate postarrest, pre-*Miranda* warnings silence to impeach his testimony when a neutral expectancy of an exculpatory statement exists as a result of his testimony and his silence is probative of inconsistencies in that testimony. *State v. Antwine*, 743 S.W.2d 51, 69[22] (Mo.banc 1987). Where a defendant offers an explanation for his conduct under circumstances suggesting he naturally would have given the explanation earlier, if true, his previous silence may be used for impeachment purposes if his silence was not the result of an exercise of a constitutional right. *State v. Wallace*, 952 S.W.2d 395, 396[4] (Mo.App. W.D.1997).

Defendant was in custody serving cumulative sentences of fifteen years imposed in other cases when the charges were filed in this case. There is no evidence that he had been given *Miranda* warnings, or had invoked his right to remain silent.

In the absence of evidence, or an offer of proof, of *Miranda* warnings and silence, there is nothing to show that the question about defendant's previous silence was a violation of constitutional guarantees. His testimony created a neutral expectancy

that he would have given the exculpatory information earlier, if true; and his silence was of probative value in determining his credibility. *See Antwine,* 743 S.W.2d at 69[22]. The use of defendant's previous silence for impeachment purposes was proper, and the trial court did not err in overruling his objection.

■ Defendant contends that the trial court erred in permitting one of his witnesses to assert the Fifth Amendment privilege against self-incrimination because the witness had waived the privilege by previously disclosing information which incriminated him. He does not point to any place in the record where the witness had incriminated himself.

■ Defendant submitted nine exhibits in support of this and other points, and the State filed motions to strike the exhibits. Defendant is limited to the record made in the trial court and motion court, and we are limited to consideration of the evidence in the record. *State v. Weber,* 814 S.W.2d 298, 301[3] (Mo.App. E.D.1991); *State v. Pendergrass,* 869 S.W.2d 816, 819 n. 1 (Mo.App. S.D.1994); *State v. Thomas,* 965 S.W.2d 396, 402 n. 3 (Mo.App. S.D.1998); *State v. Wilbur,* 976 S.W.2d 15, 16[5] (Mo. App. S.D.1998). We grant the motions to strike and disregard the exhibits.

At a pretrial hearing upon a motion claiming that the prosecutor had failed to disclose exculpatory evidence, defendant's attorney called Timothy Harris as a witness. Harris, who had seven prior convictions, then was an inmate in the Farmington Correctional Center with defendant. He testified that he had told the prosecuting attorney that he knew defendant was not guilty and Big Lloyd was guilty. He said that he had also told an uncle of defendant, and a previous attorney for defendant, who took notes of his interview with Harris. When Harris was asked how he knew that Lloyd Tabor "did it," and was asked to tell how it happened, he refused to answer because he feared that felony charges would be filed against him.

The court ruled that Harris had invoked the Fifth Amendment. The prosecutor asked additional questions, and defendant's attorney objected upon the grounds that Harris had requested counsel and had invoked the Fifth Amendment. Harris gave no other substantive testimony at the hearing.

Defendant's attorney called Harris as a witness at the trial. However, as to certain questions, Harris invoked his Fifth Amendment privilege not to testify. As to those questions, defendant's attorney told the court that he did not want to press him to testify. Although given the opportunity, the attorney made no offer of proof as to what the testimony would have been.

■ Defendant relies on *Rogers v. U.S.,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951) to support his contention that Harris.waived his Fifth Amendment privilege by disclosing information that incriminated him. *Rogers* does hold that if a witness elects to waive his privilege he cannot invoke the privilege to avoid disclosure of the details. *Id.* 340 U.S. at 373, 71 S.Ct. at 442. However, a witness does not waive the privilege by answering matters that do not incriminate him. *Williams–El v. State,* 768 S.W.2d 605, 607 (Mo.App.1989).

■ If a trial court excludes evidence, an offer of proof must be made stating facts which are specific and sufficient in detail to establish the admissibility of the evidence sought to be introduced. *State v. Hill,* 817 S.W.2d 584, 587 (Mo.App. 1991). In order to preserve any possible error, the offer of proof must provide the appellate court with a record from which it can determine whether the exclusion was erroneous and prejudicial. An appellate court cannot reverse a judgment on this ground unless it finds that error was committed materially affecting the merits of the action. *State v. Brosseit,* 958 S.W.2d 615, 618[4] (Mo.App. W.D.1998).

Harris did not waive his privilege against self-incrimination, and the trial court properly permitted him to invoke the

privilege. There being no evidence, or offer of proof, as to what his testimony would have been had he testified, defendant has not shown that he has been prejudiced. This point is denied.

■ Defendant argues that the trial court erred in overruling his motion to dismiss the information, claiming that the prosecutor failed to disclose exculpatory information to him prior to trial in violation of Rule 25.03 and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Defendant bases his argument on the pretrial testimony of Harris and the testimony of defendant's uncle that he had told the prosecuting attorney what Harris had told him.

The trial court found that it was not established that the State was in possession of any exculpatory evidence, and that defendant's previous attorney had obtained from Harris at least seven months before the trial the information that defendant claims was exculpatory.

Upon request by a defendant's attorney, disclosure must be made of any material or information within the possession or control of the State which tends to negate the guilt of the defendant as to the offense charged, mitigate the degree of the offense, or reduce the punishment. Rule 25.03(A)(9). Defendant's attorney had filed a request for disclosure tracking the language of this Rule.

■ The purpose of the discovery rules is to enable a defendant to adequately prepare his defense to ensure him a fundamentally fair trial, and the appropriate sanctions for failure to make timely disclosure are left to the sound discretion of the trial court. Appellate courts will intervene only where a defendant shows that the failure to make a timely disclosure resulted in fundamental unfairness. *State v. Coutee,* 879 S.W.2d 762, 769[13] (Mo. App. S.D.1994).

■ *Brady* holds that the suppression by the prosecution of evidence favorable to an accused upon request for dis-closure, violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 87, 83 S.Ct. at 1196–97. The evidence is material where there was a general request for disclosure only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different. A constitutional error occurs only if the suppression undermines confidence in the outcome of the trial. *U.S. v. Bagley,* 473 U.S. 667, 678, 682, 105 S.Ct. 3375, 3381, 3383, 87 L.Ed.2d 481 (1985).

■ *Brady* applies to the situations involving discovery after trial of information which had been known to the prosecution but unknown to the defense. *State v. Perry,* 879 S.W.2d 609, 613 (Mo.App. E.D. 1994). The State cannot be faulted for nondisclosure if the defendant had knowledge of the evidence at the time of trial. *State v. Calvert,* 879 S.W.2d 546, 548[3] (Mo.App. W.D.1994).

Defendant did not establish that there was a failure to make timely disclosure of exculpatory information. There was no fundamental unfairness, nor is there a reasonable probability that the result of the trial would have been different had there been earlier disclosure. There is no reason for this court to intervene.

■ Defendant maintains that the trial court erred in denying his motion to disqualify the prosecuting attorney. He claims that because the prosecutor did not disclose exculpatory information before the trial as required by *Brady,* Rule 25.03 and Rule 4–3.8(d), he was a material witness for defendant as to the statements allegedly made to him by Harris and defendant's uncle. Defendant relies on Rule 4–3.7 which provides, with certain exceptions, that a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness.

 The most that the prosecutor could have testified to was that Harris had told him that defendant was innocent and Big Lloyd had committed the offenses; and that defendant's uncle had told the prosecutor what Harris had told the uncle. Such testimony as to these unsupported assertions of Harris would have been inadmissible as hearsay. Evidence which has no other effect than to cast a bare suspicion on another person, or raise a conjectural inference that another person committed the offenses, is not admissible. There must be proof that such other person committed some act directly connecting him with the crime. *State v. Schaal,* 806 S.W.2d 659, 669[18] (Mo.banc 1991); *State v. Brown,* 916 S.W.2d 420, 423[7] (Mo.App. E.D.1996); *State v. Chaney,* 967 S.W.2d 47, 55[8] (Mo.banc), *cert. denied,* —— U.S. ——, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998). The disqualification of a prosecutor who is a witness is necessary only where he is the only person available to testify on the issue; not where his testimony is cumulative in nature. *State v. Werneke,* 958 S.W.2d 314, 316 (Mo.App. W.D.1997); *State v. Strughold,* 973 S.W.2d 876, 890[36] (Mo.App. E.D. 1998). Disqualifying a prosecutor is directed to the sound discretion of the trial court. *State v. Sonka,* 893 S.W.2d 388, 389[1] (Mo.App. S.D.1995). It was not established that the prosecutor withheld exculpatory information and he was neither a material nor a necessary witness. The trial court did not err in overruling defendant's motion to disqualify him.

 Defendant asserts that the trial court erred in denying his motion to reveal confidential informants and dismiss the information because he was unable to adequately defend himself without knowing before the trial who the informants were. He claims that it was only at trial that he learned that both Big Lloyd and Little Lloyd were informants.

It was developed in the trial that Big Lloyd had given information that defendant had been driving the Camaro at the time of the shooting and had an unknown passenger with him. Defendant admitted that he had known for two years that Big Lloyd was an informant in the case.

The prosecutor had told defendant's attorney before the trial that Little Lloyd was an informant, and on the second day of the trial he disclosed on the record that Little Lloyd was the informant who told about the rifle being in the pond. Little Lloyd's deposition was taken that night.

 The common law privilege against disclosing the identity of a confidential informant is based upon the public policy of effective law enforcement. *State v. Coleman,* 954 S.W.2d 1, 5 (Mo.App. W.D.1997). Concepts of fundamental fairness may create exceptions to the rule, and there are circumstances in which disclosure is essential to enable an accused to adequately establish a defense. *State v. Rollie,* 962 S.W.2d 412, 415[6] (Mo.App. W.D.1998). If an informant is an active participant in the crime, there is greater likelihood that fundamental fairness will require disclosure, as distinguished from situations where an informant merely provides information. *Coleman,* 954 S.W.2d at 5[9]. Participation is a major factor, but it alone does not mandate disclosure. *Id.* Where there is active informant participation, or where the informant is the sole witness, then the identity of the witness may be required for purposes of fairness. *Rollie,* 962 S.W.2d at 416[9]. Whether a defendant can have a fair trial without disclosure of the identity of an informant rests within the sound discretion of the trial court. *Id.* at 415[1]. The burden is upon the defendant to develop a record showing the need for disclosure. *Id.* at 415[3].

Defendant also knew before the trial that Big Lloyd was an informant and defendant's attorney knew that Little Lloyd was an informant sufficiently in advance to enable him to take his deposition before calling him as a witness. There is nothing to show that either informant was an ac-

tive participant in the crimes, or that they were the sole witnesses to the crimes. Defendant did not develop a need for further or earlier disclosure, and there is no showing of fundamental unfairness or that the trial court abused its discretion in refusing to grant defendant's motion.

■■■■ Defendant contends that the trial court erred in overruling his motion in limine and his objections to certain trial testimony. The interlocutory ruling on the motion in limine need not be considered as it cannot, by itself, be reversible error. *State v. Wright*, 934 S.W.2d 575, 581[8] (Mo.App. S.D.1996).

Sherrill Anthony testified that defendant owned the Camaro automobile, while defendant claimed that Sherrill owned it. Defendant asked her to try to get the car from the police and they told her to bring the title to them. She and defendant argued about her signing the "open" title, and she then testified: "We were arguing about signing the title and he told me that he had things in the car that he did not want found because he was on probation." Defendant's attorney objected and moved for a mistrial. The court denied the motion for mistrial, but instructed the jury to disregard the statement. Defendant subsequently testified that he had seven or eight felony convictions; he was on probation at the time mentioned by the witness.

■■■■ As the jury was instructed to disregard the statement, we determine only whether the trial court abused its discretion in refusing to grant a mistrial. The granting of a mistrial is a drastic remedy that should be used only when necessary to cure grievous prejudice, and in extraordinary circumstances where the prejudice to the defendant cannot be removed by any other means. *State v. Barnett*, 980 S.W.2d 297, 305 (Mo.banc 1998); *State v. Griffen*, 978 S.W.2d 445, 447[6] (Mo.App. S.D.1998). A limiting instruction may be sufficient to avoid prejudice, and the trial court is in the best position to determine the impact on the jury. *See*

*Barnett*, 980 S.W.2d at 305. The trial court's discretion to overrule a motion for mistrial will not be overturned absent a finding that it abused its discretion. *See Griffen*, 978 S.W.2d at 447. In addition, a defendant cannot be prejudiced by allegedly inadmissible evidence if he offers evidence to the same effect. *State v. Osterloh*, 773 S.W.2d 213, 217[2] (Mo.App.1989). Defendant suffered no prejudice from the ruling of the trial court, and the trial court did not abuse its discretion in refusing to declare a mistrial.

■■■ The former Debbie Tabor testified that defendant told her he had shot someone from a bridge. She asked him "why he did this and he kind of, he said that he was like on acid." Defendant's objection was overruled and he did not ask for further relief. He claims that the foregoing was evidence of other crimes or uncharged conduct that was inadmissible because it was more prejudicial than probative.

■■■■ Evidence of uncharged crimes, wrongs or acts committed by an accused is generally inadmissible for the purpose of showing his propensity to commit such acts. *State v. Gilyard*, 979 S.W.2d 138, 140[1] (Mo.banc 1998). However, such evidence is admissible if it is logically relevant in that it has some legitimate tendency to establish the accused's guilt of the charge for which he is on trial, and if the evidence is legally relevant in that its probative value outweighs its prejudicial effect. *State v. Sage*, 977 S.W.2d 65, 71 (Mo.App. W.D.1998). The balancing of the effect and value of evidence rests within the sound discretion of the trial court. *Gilyard*, 979 S.W.2d at 141. Evidence of uncharged crimes that are part of the circumstances or sequence of events surrounding the offense is admissible. *State v. Mitchell*, 975 S.W.2d 191, 197[9] (Mo. App. S.D.1998). If the evidence helps to present a complete and lucid picture of the crime charged, it is not required that the evidence be sorted and separated so as to exclude the testimony tending to prove the crime for which a defendant is not on trial.

*State v. Meadows,* 785 S.W.2d 635, 640 (Mo.App.1990). The evidence that defendant was under the influence of an illegal drug when he randomly shot at vehicles from an overpass was a part of the circumstances of the offenses that was logically and legally relevant to prove defendant's guilt. It was admissible and the trial court did not err in overruling the objection to this evidence.

■ For his final point, defendant contends that the cumulative effect of errors by the trial court denied him a fair trial. If an appellate court finds no error, then an assertion of cumulative error must be denied. *State v. Perry,* 954 S.W.2d 554, 570 (Mo.App. S.D.), *cert. denied,* —— U.S. ——, 118 S.Ct. 2062, 141 L.Ed.2d 139 (1998). As we find no errors in the rulings of the trial court, this point is denied, and the judgment of the trial court is affirmed.

Case No. 22072—Postconviction Appeal

■ Rule 29.15(b) (1995), which was in effect when defendant filed his postconviction motions, provided that if an appeal of the judgment sought to be vacated, set aside or corrected is taken, the postconviction motion shall be filed within thirty days after the filing of the transcript in the appeal. The controlling date is when the transcript was filed with the appellate court. *State v. Marsh,* 945 S.W.2d 60, 63 (Mo.App. S.D.1997); *See also State v. White,* 798 S.W.2d 694, 696 (Mo.banc 1990). The Rule specifically provided that the failure to file a motion within the time limits constituted a complete waiver of any right to proceed under Rule 29.15. The issue of timeliness is jurisdictional and it may be addressed for the first time on appeal. *Lawrence v. State,* 980 S.W.2d 135[1] (Mo.App. E.D.1998). Defendant filed the transcript in the appeal with this court on January 24, 1995. He should have filed this postconviction motion not later than February 23, 1995, but did not file it until March 3, 1995. Because the initial motion was untimely filed, the motion court did not have jurisdiction to consider the motions. It should have dismissed them even if the State did not request the court to do so. *State v. Robinson,* 927 S.W.2d 516 (Mo.App. E.D.1996); *Washington v. State,* 972 S.W.2d 347, 348[5] (Mo.App. E.D.1998).

The judgment of the motion court is vacated and this case is remanded for dismissal of defendant's Rule 29.15 motions.

JAMES K. PREWITT, Judge,
GEORGE M. FLANIGAN, Senior Judge,
DAVID P. ANDERSON, Senior Judge, concur.