STATE of Missouri, Plaintiff–Respondent,

v.

Charles David SMITH, Defendant–Appellant.

No. SD 29120.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 22, 2009.

Stephen C. Wilson, Cape Girardeau, MO, for Appellant.

Chris Koster, Jamie Pamela Rasmussen, Jefferson City, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Charles David Smith ("Appellant") appeals from his jury conviction of one count of first-degree child molestation under section 566.067.[1] Appellant raises two points on appeal, neither of which has merit. The State filed a motion to strike the appendix to Appellant's brief, which was taken with the case. We affirm the judgment and find in favor of the State's motion, striking Appellant's Appendix A.

We review the evidence in the light most favorable to the verdict. *State v. Placke*, 290 S.W.3d 145, 148–49 (Mo.App. S.D. 2009). The facts relevant to our disposition of this case are as follows. Appellant was charged with a class B felony of child molestation in the first degree based on allegations that between November 15, 2002, and September 1, 2003, Appellant subjected a twelve-year-old child to sexual contact in Bollinger County, Missouri. Appellant pled not guilty, and the case was tried to a jury in the Circuit Court of Bollinger County on February 28–29, 2008. The jury returned a verdict of guilty; Appellant was sentenced to eight years imprisonment.

The victim turned twelve years old on November 21, 2002, and at that time resided in Piggott, Arkansas, with her mother, Christina Willocks, sister, and Appellant. While the four lived in Piggott, Appellant rubbed tanning oil on victim's body, including on the victim's breasts, prior to the victim using a tanning bed owned by Appellant.[2] At some point after her twelfth

---

1. All references to statutes are to RSMo 2000, and all rule references are to Missouri Court Rules, (2008), unless otherwise specified.

2. Appellant pled guilty to the felony of sexual assault of the victim in the second degree in the Circuit Court of Clay County, Arkansas, on January 9, 2006, for the crime that occurred in Arkansas.

birthday and prior to the end of January, 2003, the victim, along with her mother and sister, moved to Patton, Missouri. Following the move, Appellant began visiting victim's mother in Patton, sometimes staying overnight, and eventually began living there. It was during these visits that additional sexual contact occurred, with the molestation ceasing at some point prior to the summer of 2003 when the victim's grandmother helped the victim report the matter to the police. The victim had previously spoken to her mother regarding the abuse, but her mother had discouraged her from contacting the police. Victim indicated that her mother took part in the sexual assault that took place in Arkansas.

During the investigation that followed the report of abuse, Jason Bell, a child abuse investigator for the Missouri Division of Family Services ("DFS"), along with Danny Byrd, a deputy sheriff for the Bollinger County Sheriff's Department assigned to the case, and Shawn Davis, a chief deputy sheriff for the Bollinger County Sheriff's Department, interviewed the victim's mother. At trial, Bell testified that during the interview, the victim's mother wore a "risqué" dress, sat with her legs open, continuously raised her skirt, repeatedly leaned over the desk, and tried to "distract" Bell and the deputies from the conversation. Bell also testified that he believed the victim's mother was "part of the problem." Davis testified that during the interview, the victim's mother was "very provocative," and that she pulled her skirt above her knees, put her foot up on the desk, and tried to deflect attention away from the investigation and "onto her." Davis testified further that the victim's mother was "very unconcerned . . . of what was going on with her daughter." Both Bell and Davis testified regarding Willocks' appearance and behavior during

the interview over Appellant's timely objection.

As part of the State's evidence offered to prove that inappropriate sexual contact occurred in Missouri, Byrd testified that the victim told him that Appellant had "moved in and stayed part of the time," and that he personally had seen Appellant's vehicle sitting outside the victim's residence in Patton "[f]or a week at a time." Byrd further testified that the vehicle he attributed to Appellant was a Mustang with Arkansas plates. Following Byrd's testimony, Appellant made a motion for a continuance for the purpose of "subpoenaing or otherwise obtaining records from the motor vehicle licensing authorities in the state of Arkansas . . . to rebut [Byrd's] testimony" by demonstrating that Appellant owned no vehicles licensed by the state of Arkansas in 2003. Appellant claimed to be surprised by Byrd's testimony regarding the car, and argued that an official record from the state of Arkansas stating that no such plates were ever issued would carry greater weight than Appellant's own trial testimony. The State countered that whether the car was licensed to Appellant by the state of Arkansas did not directly rebut Byrd's testimony, and therefore was a collateral issue. The court, noting the unlikelihood of Arkansas' ability to produce any sort of statement that no such vehicle was registered to Appellant, overruled the motion for continuance.

At the hearing on Appellant's motion for new trial, Appellant produced a document purporting to be a letter from the Arkansas Department of Finance and Administration stating that there is "no record of a vehicle registered or titled in Arkansas in the name of [Appellant]." While the document was discussed with the trial judge at that hearing, the document was not admitted into evidence or filed with the court. Appellant's motion for new trial was de-

nied and he was sentenced to eight years incarceration. In his appeal to this Court, Appellant included a copy of the document in "Appendix A" to his brief. The State filed a motion to strike the appendix to Appellant's brief, which was taken with the case.

This Court "is limited to consideration of the evidence in the record; exhibits attached to a brief may not be used to assert facts on appeal." *State v. Pendergrass,* 869 S.W.2d 816, 819 n. 1 (Mo. App. S.D.1994). While the document contained in "Appendix A" to Appellant's brief was discussed at the hearing on Appellant's motion for new trial, the document was never admitted into evidence or filed with the court, and is therefore not evidence in the certified record. Accordingly, we cannot consider the document or any reference to it.[3] The State's motion to strike the appendix to Appellant's brief is granted.

We next address Appellant's two points on appeal. First, Appellant alleges that the trial court erred in permitting the State to offer evidence assailing the character of his now former wife, Christina Willocks, because the evidence constituted an improper attack on Appellant's character. Second, Appellant alleges that the trial court erred in denying his motion for continuance during the trial to permit him to obtain records from a motor vehicle licensing authority because it denied him a fair opportunity to rebut surprise testimony of the State's witness. For the reasons set forth below, we reject Appellant's claims.

### Claim of Improper Admission of Character Evidence

In his first point, Appellant argues that the testimony of Jason Bell and Shawn Davis regarding Christina Willocks' appearance and behavior during her interview was an indirect and improper attack on Appellant's character, which was not put in issue by Appellant. Appellant claims that the State offered "irrelevant and immaterial" evidence to attack the character of the victim's mother "in an effort to smear the character of the Appellant for associating with her."

The trial court enjoys broad discretion in deciding whether to admit or exclude evidence. *State v. Taylor,* 166 S.W.3d 599, 606 (Mo.App. S.D.2005). Reversal is only required where the ruling resulted in prejudice—meaning the error more likely than not affected the outcome of the case. *Id.* It is generally improper to admit evidence of prior misconduct to suggest that defendant is more likely to be guilty of the crime charged; however, evidence of prior misconduct is admissible if it is "necessary to provide a complete and coherent picture of the crime charged, the events leading up to it, or the circumstances surrounding it." *State v. Coutee,* 879 S.W.2d 762, 767 (Mo.App. S.D.1994). In addition, evidence "showing that the inference arising or sought to be drawn [from other evidence] is not warranted, is admissible." *State v. McCoy,* 69 S.W.3d 482, 484 (Mo.App. S.D.2000). Evidence is admissible if it is both logically and legally relevant. *State v. Johnson,* 201 S.W.3d 551, 555–56 (Mo.App. S.D.2006). Evidence is logically relevant if it tends to establish defendant's guilt; it is legally relevant when "its probative value outweighs its prejudicial effect." *State v. Barriner,* 34 S.W.3d 139, 144–45 (Mo. banc 2000) (internal citations omitted). "The balancing of

---

**3.** In *State v. Pendergrass,* 869 S.W.2d 816, 819 n. 1 (Mo.App. S.D.1994), this Court noted the clarity of this rule and expressed its astonishment at a party's attempt to place before it materials outside of the record. We echo that sentiment here.

the effect and value of evidence rests within the sound discretion of the trial court." *Bernard,* 849 S.W.2d at 13.

We find that the trial court did not abuse its discretion. At trial, Appellant used the fact that the victim did not report the alleged abuse until she had moved in with her grandmother to support his theory that the victim had fabricated her claims in order to remain living there. Appellant's claim that the victim waited to report the alleged sexual contact until she moved in with her grandmother gave the jury reason to infer that she had fabricated her accusations against him in order to remain there. This theory invited the State's evidence to the contrary, which was presented in the form of testimony from Bell and Davis that Willocks attempted to distract them from investigating her daughter's claims. Their testimony allowed the finder of fact to draw a different inference than that drawn from Appellant's theory: that the victim waited to report the abuse to someone other than her mother because her mother would not have helped her. This evidence provides a more complete picture of the circumstances surrounding the abuse. We agree with the State's argument that testimony regarding Willocks' behavior provided an alternative reason for the victim's delay in reporting the abuse.

Furthermore, we cannot say that the probative value of the evidence was outweighed by prejudice to Appellant, because we fail to see how Willocks' actions during her interview in any way reflect negatively on Appellant's character. The testimony was therefore legally relevant as well as logically relevant. Point I is denied.

### Denial of the Motion for Continuance

In his second point, Appellant alleges that the trial court erred in denying his motion for continuance in order to obtain documentary evidence that Appellant did not own a licensed vehicle in Arkansas. The trial court enjoys broad discretion in ruling on a motion for continuance.[4] *State v. Lucas,* 218 S.W.3d 626, 629 (Mo.App. S.D.2007). Its decision " 'will not be disturbed absent a strong showing of abuse.' " *Id. (quoting State v. Lopez,* 836 S.W.2d 28, 32 (Mo.App. E.D. 1992)). In order for us to find that a refusal to grant a continuance was an abuse of discretion, the movant must show the denial was prejudicial. *Id.*

Appellant argues that the court's refusal to grant the motion for continuance was prejudicial because it denied Appellant's right to a fair trial and the opportunity to present the best defense possible, in that the document sought as evidence would have been a more compelling rebuttal to Byrd's testimony. The State counters that the denial of Appellant's motion was not prejudicial because the evidence sought was impeachment evidence pertaining to a collateral issue to the crime charged.

Evidence sought solely for the purpose of impeaching a witness is an insufficient ground for granting a continuance. *State v. Brown,* 762 S.W.2d 471, 475 (Mo.App. E.D.1988). "Where testimony of an absent witness would not bear directly

---

4. The State argues that Appellant's motion for continuance did not comply with Rule 24.09 because it was neither in writing, nor accompanied by an affidavit, and that failure to comply with the rule's requirements was sufficient grounds for the denial of Appellant's motion for continuance. First, we note that Rule 24.09, effective January 1, 2004, does not require an affidavit be filed. We also note that the text of Rule 24.09 indicates that it applies to *pre*-trial motions. In this case, the motion for continuance was made during the trial; therefore, we decline to base our decision on Appellant's failure to file the motion in writing.

 

on the guilt or innocence of a defendant, but would simply impeach the testimony of another witness, it is not error to deny a continuance." *Id.* While Appellant sought a continuance to obtain documentary evidence, as opposed to an absent witness, we see no reason not to apply the same rule in this case to documentary evidence.

Appellant admits that the evidence to be sought during the continuance bore on the witness' credibility. The only potential value of the evidence sought was as circumstantial evidence that Byrd was mistaken in attributing ownership of the car to Appellant. Thus, it is impeachment evidence and not a sufficient ground to grant Appellant's motion for continuance. Whether or not the car was licensed to Appellant by the state of Arkansas is a collateral issue to the crime charged.

Furthermore, even if Appellant had been granted an opportunity to seek evidence that the car was not registered to him and been able to produce it, that evidence would have had no bearing on whether Appellant subjected the victim to sexual contact in Missouri. Under section 566.067, a person is guilty of first-degree child molestation if he subjects a person under the age of fourteen to sexual contact. The evidence sought would not have proven that Appellant did not have use of the car, that Byrd was in fact mistaken as to the Arkansas plates, or that Appellant was not in Patton at the time the alleged molestation occurred. It simply would have proven that the car was not licensed to Appellant by the state of Arkansas.

Appellant freely admitted at trial that he visited the victim's mother in Patton once a week and occasionally spent the night there during the period in which the molestation allegedly took place. Considering Appellant's testimony, we fail to see how proof that a car is not licensed to him could be so exculpatory as to lead the jury to draw a different conclusion regarding his guilt. Given that such evidence would have had so little probative value, the court's denial of Appellant's motion for continuance in order to obtain it was not prejudicial.[5]

Based on the circumstances then before the court, the trial judge was well within his discretion in denying Appellant's motion for continuance. Point II is denied.

The judgment is affirmed.

LYNCH, C.J., BURRELL, P.J., concur.

---

**5.** Appellant also argues that the court's reasoning for denying the motion—the unlikelihood of Arkansas' ability to produce any sort of statement that no such vehicle was registered to Appellant—constitutes an abuse of discretion. A trial court's ruling constitutes an abuse of discretion where it is "clearly against the logic of the circumstances *then before* the court, and is so arbitrary and unreasonable" that it shocks the sense of justice and indicates a lack of careful consideration. *State v. Christeson,* 50 S.W.3d 251, 261 (Mo. banc 2001) (emphasis added). The fact that Appellant eventually did obtain a document purporting to be that which the trial judge did not believe he could obtain does not make the denial of the motion for continuance any less reasonable.