

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED103776 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Michael F. Stelzer |
| MICHAEL ALLEN, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 17, 2017 |

## Introduction

Michael Allen ("Allen") was convicted on two counts of second-degree burglary following a bench trial. Allen asserts on appeal that the trial court abused its discretion in granting the State's request for a continuance mid-trial and that there was insufficient evidence to support one of his second-degree-burglary convictions. Because the trial court did not abuse its discretion in continuing the bench trial for twelve days in order to hear evidence from additional witnesses and because the State presented sufficient evidence for the trial court to infer that Allen intended to steal when he entered the property at issue, we affirm the judgment of the trial court.

## Factual and Procedural History

The State charged Allen with four counts of second-degree burglary and three counts of stealing a firearm. The case proceeded to a bench trial, where the trial court found Allen guilty

of two counts of second-degree burglary and acquitted him of all other charges. Specifically, the trial court found Allen guilty for burglaries committed at 5572 Natural Bridge Road[1] ("the Natural Bridge Burglary") and 2423 North Grand Boulevard ("the North Grand Burglary").

Before the bench trial began on September 16, 2015, the State informed the trial court that not all of the necessary witnesses were available to testify. The State requested that the trial court hold a partial hearing on September 16, 2015, and conclude the bench trial at a later date. Over Allen's objection, the trial court stated that it was inclined to permit a partial hearing for the witnesses then present and later allow additional witnesses to testify. Allen proceeded to waive his right to a jury trial.

Regarding the Natural Bridge Burglary, Dominic McNair ("McNair") testified that he operated a daycare located at 5572 Natural Bridge Road. McNair received a telephone call from the alarm company on May 14, 2012, informing him of a possible burglary at the daycare. McNair met with police officers at the daycare, where he discovered that a window was broken and that a stone was lying inside the daycare near the broken window. McNair testified that a television was missing. On the mounting strip where the television had been attached to the wall, blood was found and collected.

Regarding the North Grand Burglary, Reverend Timothy Cook ("Reverend Cook") testified that his parish owned the building at 2423 North Grand Boulevard. Reverend Cook testified that the building was known as the VCR Building because the parish rented it to an organization called Vision for Children at Risk. Reverend Cook recalled hearing a burglar alarm sound in the middle of the night on September 9, 2012. Reverend Cook received a call from the alarm company informing him of a possible burglary at the VCR Building. Reverend Cook

---

[1] Allen does not challenge the sufficiency of the evidence as to his second-degree-burglary conviction for the Natural Bridge Burglary.

2

remembered arriving at the VCR Building with police officers, observing a broken window, seeing a brick lying inside, and finding a DVD player missing from the second shelf of a television stand as wires were hanging in the air. Reverend Cook asserted that the wires hanging in the air on the television stand were of a kind normally attached to a DVD player and that someone appeared to have manipulated the wiring. Reverend Cook stated that he did not give Allen permission to enter premises, break the window, or manipulate the wiring to the electronic devices. On cross-examination, Reverend Cook testified that he did not remember seeing the DVD player on the television stand during his last visit to the VCR Building before the burglary and that he knew that a DVD player was stolen because someone told him that a DVD player was missing. The State's evidence also showed that blood was found and collected near the broken window and at several locations inside the VCR Building, including near the television stand.

At the end of the first day of the bench trial, Allen reasserted his objection to the State's request for a continuance. Allen maintained that he was arraigned on November 6, 2014, and that he filed a request for a speedy trial on July 17, 2015. Allen noted that the State previously had made multiple motions for continuances. Allen contended that the State did not notify him of the unavailability of witnesses until the morning of trial. Allen then moved for judgment of acquittal on all counts because Detective Treis had yet to testify that a buccal swab was taken from Allen, linking Allen's DNA to the blood found at the respective crime scenes.

The State countered that all witnesses were supposed to be present for the bench trial. The State thought that Detective Treis, who was on vacation, was going to make a special appearance for the bench trial. The State was unsure if Detective Treis was still in town or out of town. After the trial court informed the State that if Detective Treis was in town the State must

3

produce him the following day, the State checked with one of its investigators off the record. The State then notified the trial court that Detective Treis was out of town.

In reviewing the State's request for a continuance, the trial court employed a balancing test and expressly considered Allen's concerns. The trial court granted the State a continuance, concluding that the length of the delay would be very short. The trial court also found that Allen would not be prejudiced by a brief continuance in the trial. The trial court scheduled the second day of the bench trial for September 28, 2015—twelve days after the trial first commenced.

The State and Allen both presented witnesses on September 28, 2015. Detective Treis testified that a buccal swab was taken from Allen in his presence. The DNA from the buccal swab matched the DNA from the blood found at the crime scenes, linking Allen to the Natural Bridge Burglary and the North Grand Burglary. In Allen's offer of proof, Detective Treis testified that he was aware that the bench trial was scheduled for September 16, 2015, but that he was on vacation. Detective Treis was unsure if he was in the City of St. Louis or if he remained in Jefferson County on September 16, 2015.

At the conclusion of the bench trial, Allen moved for a judgment of acquittal as to the charges. The trial court found Allen guilty of two counts of second-degree burglary, one for each the Natural Bridge Burglary and the North Grand Burglary, but acquitted him of all other charges. The trial court then sentenced Allen to five years in prison on each of the second-degree-burglary convictions, ordering the sentences to run concurrently. This appeal follows.

## Points on Appeal

Allen presents two points on appeal. Allen first argues that the trial court abused its discretion in granting the State's mid-trial request for a continuance because the trial court improperly relied on the prosecutor's statement that Detective Treis was out of town. Allen next argues that the State provided insufficient evidence of his intent to commit a crime when he

4

entered the VCR Building. Therefore, the State failed to prove a required element of second-degree burglary for the North Grand Burglary.

Discussion

## I. The State's Motion for a Continuance

### A. Standard of Review

The decision to grant a motion for a continuance is within the sound discretion of the trial court. State v. Jones, 479 S.W.3d 100, 111 (Mo. banc 2016). The trial court abuses its discretion when its ruling "is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." State v. Litherland, 477 S.W.3d 156, 163 (Mo. App. E.D. 2015) (quoting State v. Wolf, 91 S.W.3d 636, 645 (Mo. App. W.D. 2002)). We review the trial court's ruling on a motion for a continuance based upon the circumstances of each case. See id. An appellant must demonstrate through a strong showing that not only did the trial court abuse its sound discretion, but also that prejudice resulted from the action of the trial court. Jones, 479 S.W.3d at 111.

### B. The Trial Court Did Not Abuse its Discretion in Continuing the Bench Trial

Allen contends that the trial court abused its discretion in granting the State's mid-trial request for a continuance of the bench trial because the trial court improperly relied on the prosecutor's statement that Detective Treis was out of town.[2] Allen asserts that this purported trial-court error was prejudicial, as he would not have waived his right to a jury trial otherwise. Allen maintains that if he received a jury trial, the trial court would not have granted the State's request for a continuance during trial. Therefore, the jury would not have heard Detective

---

[2] Allen does not assert on appeal that the trial court's ruling violated his constitutional right to a speedy trial.

5

Treis's testimony linking Allen to the blood found at the site of the burglaries. Without

Detective Treis's testimony, Allen argues that he would have been acquitted on all counts.

In examining the trial court's decision to grant or deny a request for a continuance, we look to the circumstances *then before the trial court*. Litherland, 477 S.W.3d at 163–64; State v. Smith, 292 S.W.3d 595, 601 n.5 (Mo. App. S.D. 2009). Here, the State notified the trial court of the potential unavailability of witnesses before the bench trial began. The trial court then received information that a key witness was unavailable to testify as he was out of town on vacation.[3] While the trial court must consider the differing interests before it, the trial court may grant a continuance due to the temporary unavailability of key witnesses. Cf. Litherland, 477 S.W.3d at 164–65 (stating that the trial court abused its discretion by denying the defendant's request for a continuance when a key witness was temporarily unavailable); State v. Simino, 397 S.W.3d 11, 22 (Mo. App. S.D. 2013) (stating that, in the context of a speedy-trial analysis, "a delay due to an unavailable witness is a valid delay" justifying a continuance).

The record before us shows that the trial court expressly balanced the various interests before it, inquiring about the number of continuances requested since the filing of the motion for a speedy trial. The trial court then concluded that a twelve-day continuance in order to secure the testimony of an important witness was necessary and not prejudicial to Allen. The trial court's decision to hear testimony from the witnesses then present, and then to continue the bench trial for a short period—twelve days—for the presentation of additional evidence was not so unreasonable as to shock our sense of justice and indicate a lack of careful consideration. To

---

[3] The fact that Detective Treis later testified that he may have been in the City of St. Louis, and thus in town on September 16, 2015, does not render the trial court's decision to continue the trial unreasonable. We must consider the reasonableness of the trial court's action under the circumstances *then before it*. See Smith, 292 S.W.3d at 601 n.5. Absent reason to know otherwise, the trial court's reliance on the statements of the prosecutor was not arbitrary or capricious.

the contrary, the record demonstrates that the trial court carefully considered the issue before rendering its ruling.

Allen is also not able to show that he was prejudiced by the trial court's ruling. The record definitively establishes that Allen decided to waive his right to a jury trial *after* being informed that Detective Treis was unable to testify and that the trial court was inclined to grant the State's request for a continuance. If Allen desired a jury trial, he could have stated such after the State informed him of Detective Treis's unavailability. To the contrary, an informed Allen elected to waive his right to a trial by jury. Further, the record does not demonstrate that the twelve-day continuance impeded Allen's ability to call witnesses, to present evidence at trial, or to conduct an effective defense during both days of the bench trial. Because Allen has failed to make a strong showing that the trial court abused its sound discretion and that prejudice resulted, we deny Point One.

## II.   Sufficiency of the Evidence

### A.   Standard of Review

We review the sufficiency of the evidence in a bench trial of a criminal case to determine "whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty; and in so doing, we examine the evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence and inferences." State v. Brown, 360 S.W.3d 919, 922 (Mo. App. W.D. 2012) (citing State v. Johnson, 244 S.W.3d 144, 152 (Mo. banc 2008)). We will not, however, "supply missing evidence, or give the State the benefit of unreasonable, speculative, or forced inferences." State v. Brown, 457 S.W.3d 772, 779 (Mo. App. E.D. 2014).

7

B.     The State Provided Sufficient Evidence

Allen argues that the State did not provide sufficient evidence from which the trial court could have concluded that he entered the VCR Building with the intent to commit a crime therein, which is a required element of second-degree burglary. Allen posits that the State provided evidence establishing only that Allen was inside the VCR Building unlawfully and thus, insufficient evidence exists to support his conviction for the North Grand Burglary.

Section 569.170[4] provides that a person "commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." The State charged Allen with knowingly and unlawfully entering the VCR Building for the purpose of committing the crime of stealing.

The intent to commit a crime is an essential element of burglary that separates second-degree burglary from the lesser-included offense of first-degree trespass. State v. Gibbs, 306 S.W.3d 178, 181 (Mo. App. E.D. 2010). Yet, "[i]ntent to commit a crime is most often proved by circumstantial evidence and it may be inferred from the surrounding facts or the act itself." State v. Dixon, 495 S.W.3d 812, 820 (Mo. App. S.D. 2016) (quoting State v. Wrice, 389 S.W.3d 738, 740 (Mo. App. E.D. 2013)). Circumstantial evidence alone can be sufficient to support a conviction, and the evidence need not demonstrate the impossibility of innocence. State v. Mosby, 341 S.W.3d 154, 156 (Mo. App. E.D. 2011). The State is not required to prove that the defendant actually committed the intended crime inside the building. State v. Leonard, 490 S.W.3d 730, 738 (Mo. App. W.D. 2016).

---

[4] All statutory references are to RSMo (2000).

Allen primarily relies on J.N.C.B. v. Juvenile Officer, 403 S.W.3d 120 (Mo. App. W.D. 2013), to argue that the State provided insufficient evidence to draw the inference of his intent to commit a crime inside the VCR Building. In J.N.C.B., a juvenile was convicted of second-degree burglary after a security guard found several juveniles noisily conversing inside a closed school at night. Id. at 123. The Western District overturned the juvenile's conviction, determining that the State only proved the juvenile's unlawful presence in the building. Id. at 129. The J.N.C.B. court noted that additional supportive facts were needed to sustain the inference that the defendant intended to commit a crime within the building, such as "forced entry, flight, weapons, burglary tools, admissions, established or readily presumed knowledge of the presence of valuables, or the movement of valuable items within the building by the defendant or an accomplice." Id. at 125. Allen argues that—similar to the circumstances in J.N.C.B.—his mere presence in the VCR Building is insufficient to sustain his second-degree-burglary conviction.

Allen's reliance on J.N.C.B. is misplaced. The J.N.C.B. court noted that the defendant's unlawful presence, along with additional supportive facts such as "forced entry . . . or the movement of valuable items within the building by defendant[,]" can sustain the inference that the defendant intended to commit a crime within the building at issue. Id. Here, Reverend Cook testified that upon arriving at the VCR Building, he noticed that the window was broken and that there was a brick lying inside the building, evidencing forced entry. Reverend Cook further testified that a DVD player was missing from second shelf of the television stand and that there were loose wires hanging in the air over the television stand. Reverend Cook stated that such wires are of the kind normally attached to a DVD player and that the wires had been

9

manipulated. Moreover, Allen's blood was found near broken window and at several locations inside the building including the area surrounding the television stand and the electronic devices.

Although Reverend Cook testified during cross-examination that he was not certain if the DVD player was present in the building at the time of the burglary, the State did not need to prove that Allen actually stole the DVD player. See Leonard, 490 S.W.3d at 738. Rather, Allen's forced entry into VCR Building in the middle of the night, his manipulation of the wiring to valuable electronic devices, and the presence of his blood near the electronic devices sufficiently support a reasonable inference that Allen entered the VCR Building with the intent to steal therein. See Wrice, 389 S.W.3d at 741 (defendant's unlawful presence at the building with tools and his manipulation of valuable copper wiring inside the building gave rise to the inference that defendant intended to committed a crime); State v. Jenkins, 741 S.W.2d 767, 768–69 (Mo. App. E.D. 1987) (defendant's forced entry into a home and the finding of his fingerprints near where items of value were kept sufficiently supported a second-degree-burglary conviction).

Unlike the circumstances before the court in J.N.C.B., the record includes additional facts supporting a reasonable inference that Allen entered the VCR Building with the intent to steal. Because there is sufficient evidence from which the trial court could reasonably infer that Allen entered the VCR Building with the intent to commit the crime of stealing, we deny Point Two.

## Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, Judge

James M. Dowd, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

10