STATE of Missouri, Respondent,

v.

Henry ROLLIE, Appellant.

No. WD 53077.

Missouri Court of Appeals,
Western District.

Feb. 10, 1998.

Jeannie Willibey, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and HOWARD and RIEDERER, JJ.

ULRICH, Chief Judge, Presiding Judge.

Henry Rollie appeals his convictions for one count of delivery of a controlled substance, section 195.211,[1] two counts of first degree trafficking drugs, section 195.222, and one count of second degree trafficking drugs, section 195.223, and sentence as a prior offender to four concurrent fifteen-year terms of imprisonment. Mr. Rollie claims that the trial court erred in (1) overruling his motion to compel the State to disclose the identity of the confidential informant and precluding him from cross-examining a State witness about the informant's credibility, bias, and motivation, and (2) sentencing him as a prior offender pursuant to section 558.019. The judgment of convictions is affirmed, and the case is remanded to the trial court with directions.

## FACTS

On November 21, 1994, Detective Robert Sorensen, while working undercover with the Jackson County Drug Task Force, was contacted by a confidential informant named

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

Linda regarding a narcotics sale she arranged between the detective and the appellant, Henry Rollie. Early that afternoon, Detective Sorensen and Linda drove to the parking lot of Feldman's store in Blue Springs. Mr. Rollie arrived in another car with two other men. All three men exited the car; Mr. Rollie got into the back seat of the detective's car; and the other men walked into the store. Linda introduced Detective Sorensen as her friend, Barry, to Mr. Rollie. Mr. Rollie then sold Detective Sorensen seven rocks of crack cocaine for $90. Mr. Rollie removed the rocks, which were individually wrapped, from a larger bag containing additional rocks and gave them to the detective. At this meeting, the two men exchanged pager numbers so they would be able to contact one another regarding future sales. After the sale, Mr. Rollie got out of the car and walked toward the store.[2] As Detective Sorensen drove Linda home, he discovered that Mr. Rollie had left his pager on the floorboard of the backseat of his car.

Later that afternoon, Detective Sorensen received a page from Mr. Rollie and called him back at his home. Mr. Rollie asked if the detective had his pager, and Detective Sorensen stated that he did. Detective Sorensen then arranged to meet Mr. Rollie at McDonald's on Van Brunt that evening to return the pager and possibly purchase more drugs.

That evening, Detective Sorensen arrived at McDonald's and parked next to Mr. Rollie's car. He returned the pager and asked Mr. Rollie if he had any crack for sale. Mr. Rollie replied that he did and asked the detective how much he wanted. Detective Sorensen asked how much he could get for $110. Mr. Rollie replied that he would sell eight rocks for $110. Detective Sorensen agreed to the sale, and Mr. Rollie counted out eight individually wrapped rocks from a larger bag. Mr. Rollie then told the detective to page him again when he wanted more. Lab tests later determined that the bags purchased by Detective Sorensen contained 1.88 grams of crack cocaine.

On December 1, 1994, Detective Sorensen paged Mr. Rollie to purchase more narcotics.

The men arranged to meet in the parking lot of Chi–Chi's restaurant at Blue Ridge Mall. When Detective Sorensen arrived, Mr. Rollie walked up to his car and sat in the front passenger seat. The detective told Mr. Rollie that he wanted to purchase $300 worth of crack, and Mr. Rollie stated that he would sell him 18 rocks for that price. Detective Sorensen said that, based on prior transactions, he thought he should get more than 18 rocks for $300, so Mr. Rollie agreed to add a larger rock. Mr. Rollie gave Detective Sorensen 18 individually wrapped rocks and removed a larger one from another bag, which contained more rocks. Detective Sorensen then asked Mr. Rollie if he could provide larger quantities. Mr. Rollie answered that he would need a day's notice and that he could sell the detective a half ounce for $500. The detective told Mr. Rollie that he was interested and would contact him at a later date. Lab tests later determined that the rocks purchased by Detective Sorensen on December 1, 1994, contained 4.67 grams of crack cocaine.

One week later, on December 8, 1994, Detective Sorensen paged Mr. Rollie to purchase a half ounce of crack for $500. Mr. Rollie agreed to sell to the detective that amount for that price. The men arranged to meet in the parking lot of McDonald's later that day. Detective Sorensen arrived at the appointment approximately 30 minutes late, parked, and waited. When Mr. Rollie did not show, Detective Sorensen paged him. Mr. Rollie returned his page stating that he had waited for the detective and would not return to McDonald's. Instead, he gave the detective an address on Troost Avenue and told him to meet him there if he was still interested in purchasing the crack.

Detective Sorensen drove to the address on Troost Avenue to complete the transaction. Other officers from his police unit drove to the address separately to arrest Mr. Rollie after the transaction. When he arrived at the address, Detective Sorensen honked the horn of his car, and Mr. Rollie came out of the house and sat in the front passenger seat of the car. He handed the

---

2. Mr. Rollie was not charged with a crime as a result of this first drug sale.

detective a large rock, which he took from his coat pocket, and Detective Sorensen gave him $500. Mr. Rollie then told Detective Sorensen to contact him if he needed more crack and got out of the car.

As Detective Sorensen drove away, Mr. Rollie was apprehended by the arresting officers. A search of Mr. Rollie found a loaded .25 caliber pistol in his jacket pocket and a clear plastic bag containing a large quantity of rocks in his pants pocket. Lab tests later revealed that the rock purchased by Detective Sorensen on December 8, 1994, contained 10.64 grams of crack cocaine and that the rocks found in Mr. Rollie's pants pocket when he was arrested contained 5.32 grams of crack cocaine.

Mr. Rollie was charged by indictment on January 6, 1995, with three counts of first degree drug trafficking, one count of second degree drug trafficking, and one count of unlawful use of a weapon. An amended information subsequently filed charged Mr. Rollie as a prior offender and changed one count of first degree drug trafficking to delivery of a controlled substance.

Prior to trial, Mr. Rollie filed a "Motion to Compel State to Produce to Defendant Police Files Regarding Confidential Informant and to Disclose the Confidential Informant's Identity." Following a hearing, the trial court overruled Mr. Rollie's motion. The State then filed a motion in limine to prevent the defense from cross-examining Detective Sorensen about his prior dealings with the confidential informant or about the informant's credibility, bias, or motivation, and the motion was sustained by the trial court.

At trial, Mr. Rollie testified in his own defense. He stated that he had met the confidential informant, Linda, in October 1994 and began a sexual relationship with her. He claimed that Linda encouraged him to sell drugs on several occasions, but he refused. Mr. Rollie asserted that he ultimately sold crack to Barry because Linda had told him she owed Barry money and he was concerned for her safety.

Following trial, the jury returned verdicts of guilty on one count of delivery of a controlled substance, two counts of first degree

trafficking drugs, and one count of second degree trafficking drugs. It acquitted Mr. Rollie of unlawful use of a weapon. The trial court sentenced Mr. Rollie as a prior offender to four concurrent fifteen-year terms of imprisonment. This appeal followed.

## CONFIDENTIAL INFORMANT

On appeal, Mr. Rollie claims that the trial court erred in overruling his "Motion to Compel State to Produce to Defendant Police Files Regarding Confidential Informant and to Disclose the Confidential Informant's Identity." He argues that the informant was a crucial witness to his entrapment defense because she was the only witness capable of contradicting Detective Sorensen's testimony.

The determination of whether a defendant can have a fair trial without disclosure of the identity of an informant rests within the sound discretion of the trial court. *State v. Gray*, 926 S.W.2d 29, 32 (Mo.App. 1996); *State v. Shannon*, 892 S.W.2d 761, 764 (Mo.App.1995). In reviewing a trial court's ruling on this issue, the appellate court must balance the relevance and importance of disclosure to the defense against the State's need for nondisclosure. *Id.* The defendant has the burden of developing a record to show the need for disclosure. *Shannon*, 892 S.W.2d at 764; *State v. Hill*, 890 S.W.2d 750, 753 (Mo.App.1995).

Communications made by informants to government officials are generally privileged and need not be disclosed. *Gray*, 926 S.W.2d at 32. The purpose of the privilege is to protect and further public interest in law enforcement by encouraging citizens to communicate their knowledge of the commission of crimes to law enforcement officials. *Id.*

Concepts of fundamental fairness create exceptions to the rule, however, where disclosure of the identity of the informant is essential to enable a defendant to adequately establish a defense. *Id.* In balancing the State's need for confidentiality against the importance of the disclosure to the defense, the particular circumstances of a case must be considered including the crime charged,

the possible defenses, the possible significance of the informant's testimony, and other relevant factors. *Roviaro v. U.S.,* 353 U.S. 53, 62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639 (1957). A crucial factor to be considered in determining whether disclosure of the informant's identity may be required is the role played by the informant in the criminal activity. *Gray,* 926 S.W.2d at 32. "When there is active informant participation plus other factors, such as mistaken identity, contradictory testimony, or a denial of the accusation, or when the informant is the sole witness to the crime charged, then the identity of the informant *may* be required for purposes of fairness." *Id.* Other instances where disclosure of the identity of the informant may be required are when the informant is the sole participant, other than the accused, in the drug transaction charged or the informant is the only witness in a position to be called on behalf of the defense. *State v. Sproul,* 786 S.W.2d 169, 171 (Mo.App.1990).

■■■ In his motion to disclose and suggestions in support of the motion, Mr. Rollie alleged that "he was not predisposed to sell the drugs to the undercover agent, but for the inducements and arm-twisting of the undercover agent and the confidential informant, he would not have transacted the drug sale." At the hearing on the motion, defense counsel argued that the informant, Linda, and Mr. Rollie engaged in a sexual relationship, that she established a relationship of trust and confidence with Mr. Rollie, and that she induced Mr. Rollie to sell crack. Mr. Rollie, however, failed to develop a record establishing his need for the informant's identity. He did not offer any evidence at the hearing on his motion to support any of the allegations in the motion or the argument of counsel. Arguments and statements of counsel are not evidence of the facts presented. *Shannon,* 892 S.W.2d at 765. Additionally, the record did not establish that Mr. Rollie did not know the identity of the confidential informant. *Gray,* 926 S.W.2d at 33. On the contrary, counsel argued the Mr. Rollie was involved in an intimate relationship with Linda and spent a great deal of time with her. Mr. Rollie's defense was that it was out of Mr. Rollie's concern for Linda's safety that he sold crack to "Barry." Mr.

Rollie's own trial testimony indicated that he engaged in a sexual relationship with Linda for a period of several weeks and that he knew where she worked, where she lived, with whom she lived, and other places she frequented. The record also did not establish that had Linda's location been disclosed when requested, she would have been available to testify nor does anything in the record indicate that the State knew Linda's location. *Hill,* 890 S.W.2d at 753. Mr. Rollie, therefore, failed to meet his burden of showing a need for disclosure of the informant's identity.

The facts in this case did not support a claim that disclosure was required. The informant, Linda, was not the sole participant, other than Mr. Rollie, in the crimes charged. *Sproul,* 786 S.W.2d at 172. Linda arranged the initial meeting between Detective Sorensen and Mr. Rollie. After the initial transaction, Linda was not present during the sales between the detective and Mr. Rollie for which Mr. Rollie was charged. Even if Linda had knowledge about the sales for which Mr. Rollie was indicted, she was not the only witness having knowledge about the sales whom the defense could have called. Mr. Rollie claims in his brief and at trial that he obtained the crack cocaine sold to the detective from acquaintances, who either accompanied or followed Mr. Rollie to the appointments with the detective. Yet, Mr. Rollie did not call any of these people to testify about the circumstances of the sales. The trial court, therefore, did not err in overruling Mr. Rollie's motion to disclose the informant's identity.

Mr. Rollie also argues that the trial court erred in refusing to require the State to provide information regarding the informant's credibility, bias, and motivation and in precluding him from cross-examining Detective Sorensen about these subjects. He claims the information was relevant in this case to prove his entrapment defense.

■■■ The United States and Missouri Constitutions guarantee a charged defendant the right to confront his accuser. *State v. Dunn,* 817 S.W.2d 241, 244 (Mo. banc 1991), *cert. denied,* 503 U.S. 992, 112 S.Ct. 1689, 118

L.Ed.2d 403 (1992). A defendant must be given "an opportunity for effective cross-examination, [but] not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (quoting *Kentucky v. Stincer,* 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987)). Thus, a defendant is entitled to cross-examine a witness regarding the witness's bias or motivation for testifying against the defendant. *Dunn,* 817 S.W.2d at 244. Questions to a law enforcement officer regarding the State's arrangement with an informant or the officer's prior dealings with an informant are, however, usually irrelevant and properly excluded. *Id.* "Even where questions regarding other persons are relevant to establishing some elements of the defense, it is within the trial court's discretion to restrict cross-examination." *Id.*

 In this case, the informant, Linda, did not testify at trial against Mr. Rollie nor was she a witness or participant in the charged crimes. Her credibility, bias, and motivation, therefore, were irrelevant. *Dunn,* 817 S.W.2d at 244–245; *State v. Lockhart,* 507 S.W.2d 395, 397 (Mo.1974). Moreover, Mr. Rollie testified regarding Linda's crack use and prostitution and, thus, was not entirely foreclosed from exploring her possible motivation or bias. *Dunn,* 817 S.W.2d at 245. The trial court did not abuse its discretion in restricting the cross-examination of Detective Sorensen. Point one is denied.

Entry of an order *nunc pro tunc* under Rule 29.12(c) to correct an error in the trial court's written judgment is necessary. *State v. Winters,* 900 S.W.2d 636, 640 (Mo. App.1995). In the written judgment, the trial court found Mr. Rollie to be a "prior offender pursuant to the provisions of Sections 558.019, RSMo." Section 558.019 provides, however, that "[t]he provisions of this section shall be applicable to all classes of felonies except those set forth in chapter 195, RSMo." § 558.019.2. Because Mr. Rollie was convicted of one count of delivery of a controlled substance, section 195.211, two counts of first degree trafficking drugs, section 195.222, and one count of second degree trafficking drugs, section 195.223, section 558.019 was inapplicable. Additionally, section 558.019 no longer employs the term "prior offender." *State v. Maddix,* 935 S.W.2d 666, 671 n. 5 (Mo.App.1996). Point two, therefore, is granted.

The judgment of the trial court is affirmed. The case, however, is remanded to the trial court for correction of the judgment to remove reference to section 558.019.

All concur.