STATE of Missouri, Respondent,

v.

Ian C. DOWELL, Appellant.

No. WD 57050.

Missouri Court of Appeals,
Western District.

Aug. 22, 2000.

598

Richard E. McFadin, Gallatin, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before: EDWIN H. SMITH, P.J., and LOWENSTEIN and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

Ian C. Dowell appeals the judgment of his jury conviction in the Circuit Court of Jackson County for manufacturing a controlled substance, § 195.211,[1] for which he was sentenced to ten years imprisonment in the Missouri Department of Corrections.

The appellant raises four points on appeal. In Point I, he claims that the trial court "erred in denying [his] motion in limine and request for mistrial" with respect to the introduction of evidence concerning his arrest and seizure of methamphetamine, a syringe, and Colt .45 semi-automatic handgun in connection with a traffic stop of the appellant. In Point II, he claims that the trial court erred in overruling his pretrial motion to suppress and admitting evidence concerning the

1. All statutory references are to RSMo 1994, unless otherwise indicated.

items seized during the execution of the search warrant of his residence because the search and seizure were illegal in that the issuance of the warrant was not supported by probable cause. In Point III, he claims that the trial court erred in overruling his pretrial motion for disclosure of the identity of the State's confidential informant because it violated his constitutional rights to adequately prepare a defense and to confront his accuser. In Point IV, he claims that the trial court erred in allowing the endorsement of an additional witness by the State less than a week before trial without granting him a continuance because in doing so, his trial counsel, in violation of due process, was denied an opportunity to adequately prepare for trial.

We affirm.

### Facts

In January of 1997, the Drug Enforcement Unit of the Independence Police Department received information that the appellant was involved in manufacturing methamphetamine at his residence at 249 North Evanston in Independence. On the morning of March 16, 1997, Officer Steve Warren, assigned to the Jackson County Drug Task Force, was conducting surveillance of the appellant's house. A white male, later identified as the appellant, was observed by Officer Warren leaving the residence in a black Ford Bronco. The subject had been seen leaving the residence by Officer Warren on several occasions during the previous two to three weeks.

As the appellant drove south on Evanston, Officer Warren followed and immediately noticed that the appellant's vehicle did not have a front license plate, in violation of state law. He also observed that the vehicle had no working tail or brake lights, also violations, when it stopped at the intersection of Evanston and Scarritt.

At Kentucky and Evanston, Officer Warren activated his lights and siren in an attempt to stop the appellant. However,

rather than pull over immediately, the appellant turned on Kentucky and continued driving for a block. As he was in pursuit of the appellant, he saw him "reach[ ] down beside his person, and place[ ] something over on the passenger's side seat." The appellant finally pulled over at Kentucky and Arlington.

After the stop, Officer Warren approached the appellant's vehicle and advised him that he had been stopped for the two traffic violations observed by the officer. The appellant identified himself as "Ian Dowell" and stated that he resided at 249 North Evanston. Officer Warren instructed the appellant to step to the rear of the vehicle and then radioed for backup. He then informed the appellant as to what he had observed concerning his reaching over to the passenger seat and asked if there were any weapons in the vehicle. The appellant answered, "No."

Officer Warren frisked the appellant and found no weapons. He then searched that portion of the Bronco which was within the reach of the appellant as he was sitting in the driver's seat. Pursuant to his search, he found a loaded Colt .45 semi-automatic handgun tucked in the passenger seat. As a result, the appellant was placed under arrest for carrying a concealed weapon, a violation of state law. A further search was then conducted of the appellant, which led to the discovery of a plastic bag containing a white powdery substance and a syringe in his left jeans pocket. The substance was field tested, testing positive for methamphetamine. He subsequently was charged and pled guilty to carrying a concealed weapon and being in possession of a controlled substance.

Later the same day the appellant was arrested as a result of the vehicle stop, the police served a search warrant on the appellant's residence. As a result of the search, methamphetamine; ingredients, supplies, and equipment for its manufacture; marijuana; drug paraphernalia; and weapons were found. On the front porch

of the residence, the police found a small listening device that allowed persons inside the house to hear someone entering the residence or talking outside. In addition, they found in the living room a closed-circuit TV monitor that was connected to two cameras that were directed on the rear and front of the house.

Having been charged with manufacturing a controlled substance, the appellant, after a jury trial in the Circuit Court of Jackson County, was found guilty on January 28, 1999. On March 5, 1999, he was sentenced to a term of imprisonment of ten years in the Missouri Department of Corrections.

This appeal follows.

## I.

In Point I, the appellant claims that the trial court "erred in denying [his] motion in limine and request for mistrial" with respect to the introduction of evidence concerning the methamphetamine, syringe and Colt .45 semi-automatic handgun that were seized in connection with the traffic stop of the appellant. Specifically, he claims that the trial court erred in admitting this evidence because: (1) it allegedly violated the court's previous ruling sustaining his motion *in limine* prohibiting its introduction; and (2) it was evidence of uncharged crimes that was not logically and legally relevant in proving the charge against him. We disagree.

### A. Motion *in Limine* and "Request" to Dismiss

The appellant claims that the trial court erred in *"denying* [his] motion in limine and request for mistrial," allowing the introduction of the evidence in question at trial, because he contends in doing so, the court violated its previous ruling *granting* his pretrial motion *in limine* seeking to prohibit its introduction. We disagree.

On the one hand, the appellant in this claim contends that the trial court erred in "denying" his motion *in limine*, while on the other hand he contends that the trial court's admission of the evidence was in violation of its ruling "granting" his motion. The only plausible explanation for this facial contradiction is that in claiming as he does, he assumes that, by allowing the evidence at trial, the court had reversed its previous ruling sustaining his pretrial motion, such that, in effect, it denied his motion at trial, which he now claims as error. Even assuming, *arguendo*, that the trial court did, in fact, sustain his pretrial motion, prohibiting the introduction of the challenged evidence at trial, which, as the State points out, is not clear from the record, we find no merit to the appellant's claim that the trial court erred in "denying" his motion at trial.

A trial court's ruling on a motion *in limine* is interlocutory only and subject to change during the trial, preserving nothing for appellate review. *State v. Purlee,* 839 S.W.2d 584, 592 (Mo. *banc* 1992); *State v. Albanese,* 9 S.W.3d 39, 51 (Mo.App.1999). " 'The trial court's action of sustaining the pretrial motion in limine does not act as an automatic, permanent bar to the evidence sought to be excluded.' " *Albanese,* 9 S.W.3d at 51 (*quoting State v. Stephan,* 941 S.W.2d 669, 674 (Mo. App.1997)). As such, even if it initially found that the evidence should be excluded in a motion *in limine,* a trial court is free to change its ruling and admit such evidence. *Id.* at 51–52. Therefore, the proponent of the excluded evidence may attempt to present the excluded evidence at trial to enable the trial court to reexamine its previous ruling. *Id.* at 52. Hence, the fact that a trial court may have a change of heart at trial, allowing the introduction of evidence that had been excluded previously, pursuant to a motion *in limine,* does not constitute error. Rather, any error as to the admission of the evidence would have to be based on other grounds, in this case, that it was inadmissible as evidence of uncharged crimes, as claimed by the appellant.

As to the appellant's claim that the trial court also erred in denying his "request for a mistrial," it is based on his contention that the trial court had sustained his pre-trial motion *in limine*. Specifically, he contends that in violation of the trial court's ruling sustaining his pretrial motion, the State made reference in its opening statement to the evidence alleged to have been excluded such that his motion or "request" for a mistrial should have been sustained. Given our discussion, *supra*, concerning the interlocutory nature of the trial court's ruling with respect to the appellant's pretrial motion *in limine*, it was not error for the court to deny the appellant's request for a mistrial in that it is clear from the record that the court ultimately ruled that the challenged evidence was admissible at trial. Thus, the only issue presented in this claim is whether the evidence in question was inadmissible as being improper evidence of uncharged crimes, as contended by the appellant.

## B. Evidence of Uncharged Crimes

The appellant claims that the evidence concerning his arrest for carrying a concealed weapon and for possession of meth-amphetamine and the items seized pursuant to the traffic stop was not logically and legally relevant in proving his guilt of the crime of manufacturing methamphetamine. We disagree.

A trial court typically has broad discretion in deciding whether to admit evidence and, as such, its decision will not be disturbed unless a clear abuse of discretion is shown. *State v. Williams*, 976 S.W.2d 1, 2 (Mo.App.1998). "The decision to admit evidence is an abuse of discretion where it 'is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.'" *Id.* (*quoting Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. *banc* 1991)).

It is well settled that evidence of uncharged crimes is inadmissible to show that a defendant has a propensity to commit similar crimes in order to prove his guilt of the crime charged. *State v. Gilyard*, 979 S.W.2d 138, 140 (Mo. *banc* 1998) (*citing State v. Bernard*, 849 S.W.2d 10, 13 (Mo. *banc* 1993)). This is so because "showing the defendant's propensity to commit a given crime is not a proper purpose for admitting evidence, because such evidence 'may encourage the jury to convict the defendant because of his propensity to commit such crimes without regard to whether he is actually guilty of the crime charged.'" *State v. Burns*, 978 S.W.2d 759, 761 (Mo. *banc* 1998) (*quoting Bernard*, 849 S.W.2d at 16). However, evidence of uncharged crimes generally is admissible for any other purpose if it is logically relevant, "in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial," and legally relevant, in that "its probative value outweighs its prejudicial effect." *Id.*; *State v. Rehberg*, 919 S.W.2d 543, 548 (Mo.App.1995). As to legal relevancy, the probative value of the uncharged crimes evidence must outweigh its prejudicial effect to be admissible because a criminal defendant should not be convicted simply because he is a "bad guy." *Williams*, 976 S.W.2d at 4 (*citing State v. Jones*, 914 S.W.2d 852, 856 (Mo.App.1996)).

> Generally, any evidence is regarded as prejudicial that would tend to cause a jury to convict. However, in the context of determining the legal relevance of uncharged crimes evidence, prejudice is a function of whether the admission of this evidence would cause a jury to convict as to the charged crimes simply because the defendant had engaged in prior bad acts or crimes, regardless of the logically relevant evidence in the case.

*Id.* Evidence should not be excluded "simply because it also tends to prove the defendant guilty of an uncharged crime."

*Id.* (*citing State v. Simms,* 859 S.W.2d 943, 946 (Mo.App.1993)).

Our appellate courts have recognized that evidence of uncharged crimes is admissible to show motive, intent, the absence of mistake or accident, a common plan or scheme "embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other," the identity of the person charged with commission of the crime, or the defendant's signature *modus operandi. Id.; Gilyard,* 979 S.W.2d at 140–41. Evidence of uncharged crimes also has been deemed admissible "to allow the state to 'present a complete and coherent picture of the events that transpired.'" *Williams,* 976 S.W.2d at 4 (*quoting State v. Skillicorn,* 944 S.W.2d 877, 886–87 (Mo. banc 1997)).

 Due process requires that, in order to convict a person of a crime, the State is required to prove beyond a reasonable doubt each and every element of the crime charged. *State v. Grim,* 854 S.W.2d 403, 417 (Mo. banc 1993) (Robertson, C.J., dissenting). In this case, the appellant was charged and convicted of manufacturing a controlled substance, § 195.211. To convict him under this statute, the State was required to prove beyond a reasonable doubt that he: (1) knowingly manufactured methamphetamine; and (2) knew that the substance he manufactured was methamphetamine. MAI–CR 3d 325.06 [Oct. 1, 1998]. At trial, the appellant did not contest that a fully operational methamphetamine-manufacturing laboratory had been set up at his house. Instead, he claimed that he was unaware of the lab, asserting that someone, between the time he left his residence and was arrested after the traffic stop, but prior to the search of his house, must have entered it, set up the lab, and manufactured the methamphetamine. Given this theory of defense at trial, the State contends that the introduction of the evidence challenged by the appellant on appeal was both logically and legally relevant to show that he "knowingly" manufactured the methamphetamine, as it was required to show for conviction. We agree.

 As the State points out in its brief, the appellate courts of this state have recognized the general rule that in the prosecution of cases of sales and possession of controlled substances, under § 195.211, "evidence of the defendant's contemporaneous possession of other drugs, weapons, money or drug paraphernalia is relevant and admissible to show that the defendant knowingly and intentionally possessed the controlled substance," citing *State v. Yahne,* 943 S.W.2d 741, 745 (Mo.App.1997); *State v. Allen,* 856 S.W.2d 676, 677 (Mo.App.1993); *State v. Steward,* 844 S.W.2d 31, 34–35 (Mo.App. 1992); *State v. Flenoid,* 838 S.W.2d 462, 467–68 (Mo.App.1992); *State v. Camden,* 837 S.W.2d 520, 522 (Mo.App.1992); *State v. Johnson,* 811 S.W.2d 411, 415–16 (Mo. App.1991); *State v. Hall,* 687 S.W.2d 924, 929 (Mo.App.1985); and *State v. Pernell,* 606 S.W.2d 389, 391 (Mo.App.1979). *See also State v. Booth,* 11 S.W.3d 887, 892 (Mo.App.2000). We see no logical reason for not applying this rule in drug manufacturing cases, such as the one at bar, to allow the State to show that the defendant knew of the drug manufacturing operation. Applying the rule in this case, we find the challenged evidence was both logically and legally relevant and admissible in that, as stated by the State in its brief:

> [appellant's] possession of the handgun, the syringe and the baggie of methamphetamine at the time of his arrest, only minutes after leaving his home and only hours before the methamphetamine laboratory was discovered in his house, tended to conclusively refute his defense that he had no knowledge of the existence of the laboratory in his home, and his claim that someone must have sneaked into his house after his arrest, constructed the laboratory and manufactured the methamphetamine that was found there.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in overruling his pretrial motion to suppress and admitting evidence concerning the items seized during the execution of the search warrant of his residence because the search and seizure were illegal in that the issuance of the warrant was not supported by probable cause. As to a lack of probable cause, the appellant contends that the application for the search warrant and the affidavit filed in support thereof did not establish the requisite probable cause to search his residence in that they were based on: (1) the "arrest of [appellant] in vehicle for possession of methamphetamine [which] did not rise to probable cause that methamphetamine laboratory would be found at [appellant's] residence"; and (2) hearsay provided by an unreliable confidential informant. We disagree.

▮▮▮▮ "Appellate review of the trial court's ruling on a motion to suppress is limited to determining whether evidence is sufficient to support the trial court's ruling." *State v. McNaughton,* 924 S.W.2d 517, 522–23 (Mo.App.1996). "While the meaning of probable cause is a legal issue, its existence in a particular case is a question of fact." *State v. Berry,* 801 S.W.2d 64, 66 (Mo. banc 1990). Thus, appellate review of whether the issuance of a search warrant lacked the requisite probable cause to render the subsequent search and seizure illegal so as to exclude the evidence at trial is *not de novo. Id.* Rather, we are to give " 'great deference on review to the initial judicial determination of probable cause made at the time of the issuance of the warrant, and we reverse only if that determination is clearly erroneous.' " *State v. Middleton,* 995 S.W.2d 443, 457 (Mo. banc 1999), *cert. denied,* — U.S. ——, 120 S.Ct. 598, 145 L.Ed.2d 497 (1999) (*quoting Berry,* 801 S.W.2d at 66). A determination of probable cause is clearly erroneous only "if the appellate court is left with a definite and firm impression from the record that a mistake has been

made." *State v. Hill,* 854 S.W.2d 814, 816 (Mo.App.1993). "The trial court's ruling is to be sustained if it is plausible, in light of the record viewed in its entirety, even if the reviewing court might have weighed the evidence differently if it were sitting as the trier of fact." *Id.* at 819 (citations omitted).

▮▮▮▮ As stated, *supra,* the appellant claims that the evidence sought to be suppressed was inadmissible at trial because it resulted from an illegal search and seizure. Specifically, he contends that they were illegal in that the issuance of the search warrant for his residence was not supported by probable cause, as required by the Fourth Amendment, which is found in Mo. Const. art. I, § 15 and codified in § 542.276.4. *State v. Kriley,* 976 S.W.2d 16, 21 (Mo.App.1998). In other words, he seeks to invoke the "exclusionary rule," which is a judicially imposed sanction to safeguard a person's Fourth Amendment right to be free from unreasonable searches and seizures. *Id.*

▮▮▮▮ Pursuant to § 542.276.4, probable cause is to be determined from the four corners of the application for the search warrant and any supporting affidavits. *State v. Miller,* 815 S.W.2d 28, 32 (Mo.App. 1991). As to such an application, § 542.276.2 requires, *inter alia,* that it be in writing and "[s]tate facts sufficient to show probable cause." § 542.276.2(5). Section 542.276.3 governs supporting affidavits and provides:

> The application may be supplemented by a written affidavit verified by oath or affirmation. Such affidavit shall be considered in determining whether there is probable cause for the issuance of a search warrant and in filling out any deficiencies in the description of the person, place, or thing to be searched or of the property, article, material, substance, or person to be seized. Oral testimony shall not be considered.

▮▮▮▮ "The test for determining whether probable cause has been estab-

lished for the issuance of a search warrant is the 'totality of the circumstances.'" *Hill*, 854 S.W.2d at 817 (*quoting Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). A probable cause determination to support the issuance of a search warrant depends on the specific facts and circumstances of each case. *State v. Williams*, 9 S.W.3d 3, 14 (Mo.App. 1999). "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 231, 103 S.Ct. at 2328, 76 L.Ed.2d at 544. As such, search warrants should not be invalidated by "interpreting affidavits in a hypertechnical rather than common sense manner." *Hill*, 854 S.W.2d at 818.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud(ing)' that probable cause existed.

*Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. "It is not required that the affidavit provide proof beyond a reasonable doubt or by a preponderance of the evidence, the rule being that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Hill*, 854 S.W.2d at 819 (*quoting Gates*, 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d at 546); *see also Williams*, 9 S.W.3d at 14.

**2.** Rule 30.06(c) provides: "The statement of facts, points relied on, argument and appen-

## A. Probable Cause Based on Traffic Stop

In challenging the sufficiency of the State's affidavit to establish probable cause for issuance of the search warrant, the appellant first contends that the "arrest of [appellant] in vehicle for possession of methamphetamine did not rise to probable cause that methamphetamine laboratory would be found at [appellant's] residence." Any fair and reasonable reading of this portion of the appellant's point relied ·on leads to the conclusion that he is challenging the relevancy of evidence concerning his traffic stop in determining that there was a fair probability that he was engaged in the criminal activity of manufacturing methamphetamine at his residence to establish the requisite probable cause for the issuance of a warrant for a search of the same. However, his argument does not address this issue, but rather attacks the legality of the search and seizure with respect to the vehicle stop, contending that his arrest and the items seized were the fruit of an illegal search and seizure such that they were "tainted" and could not be used to establish probable cause for the issuance of the search warrant for his residence. This violates Rule 84.04(e),[2] which provides, in pertinent part, that "the argument shall be limited to those errors included in the 'Points Relied On.'" As a result of his failure to comply with the provisions of Rule 84.04(e), the appellant is limited to plain error review, if any, under Rule 30.20.

Rule 30.20 provides:

Allegations of error that are not briefed or *are not properly briefed* on appeal shall not be considered by the appellate court except errors respecting the sufficiency of the information or indictment, verdict, judgment, or sentence. Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or

dix shall be prepared as provided in Rule 84.04."

miscarriage of justice has resulted therefrom.

(Emphasis added.) " 'The plain error rule should be used sparingly and does not justify a review of every [alleged] trial error that has not been properly preserved for appellate review.' " *State v. McMillin,* 783 S.W.2d 82, 98 (Mo. *banc* 1990) (*quoting State v. Valentine,* 646 S.W.2d 729, 731 (Mo.1983)); *see also State v. Silvey,* 894 S.W.2d 662, 670 (Mo. *banc* 1995).

■■■■■ Giving the language in the rule its plain and ordinary meaning, we interpret it as providing for a two-step process in determining plain error review. Under the rule, the first step involves an examination to determine whether the claim for review "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,' " or in other words, whether on the face of the claim, "plain error" has, in fact, occurred. *State v. Brown,* 902 S.W.2d 278, 284 (Mo. *banc* 1995). In the absence of such a determination, a court should "decline to exercise its discretion" to review a claim of error under Rule 30.20. *Id.* The rule makes it clear that not all prejudicial error — that is, reversible error — can be deemed plain error. Plain errors are those which are "evident, obvious, and clear." *State v. Bailey,* 839 S.W.2d 657, 661 (Mo.App.1992). If plain error is found on the face of the claim, then the rule authorizes, as a matter of court discretion, a second step to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

■■■■■ The defendant bears the burden of showing that plain error has occurred which resulted in manifest injustice or a miscarriage of justice. *State v. Isa,* 850 S.W.2d 876, 884 (Mo. *banc* 1993). "Mere allegations of error and prejudice will not suffice." *Id.* "The determination [of] whether plain error exists must be based on a consideration of the facts and circumstances of each case." *State v. Cline,* 808 S.W.2d 822, 824 (Mo. *banc* 1991) (*citing State v. Sanders,* 541 S.W.2d 530, 533 (Mo. *banc* 1976)). When guilt is established by overwhelming evidence, no injustice or miscarriage of justice results requiring relief under the rule. *State v. Jordan,* 627 S.W.2d 290, 293 (Mo. *banc* 1982) (*citing State v. Bainter,* 608 S.W.2d 429, 431 (Mo.App.1980)).

■■■■■ Based on the record before us, we decline plain error review of the appellant's claim. While we would agree with the appellant that "tainted" evidence cannot be used in an affidavit to establish the requisite probable cause for the issuance of the warrant, the mere fact that it is included in the affidavit does not invalidate the warrant. *State v. Mitchell,* 20 S.W.3d 546, 560–61 (Mo.App. W.D. 2000); *State v. Macke,* 594 S.W.2d 300, 308–09 (Mo.App. 1980). The "ultimate inquiry is not whether the affidavits contained allegations based upon illegally obtained evidence but whether, if setting aside all tainted allegations, the independent and lawful information stated in the affidavits suffices to show probable cause." *Macke,* 594 S.W.2d at 309. Thus, even assuming, *arguendo,* that the evidence concerning the traffic stop was tainted, as the appellant contends, we are not to reverse, unless we find that the affidavit, excluding the alleged tainted information, failed to establish the requisite probable cause for the issuance of the search warrant. After excluding the information in the affidavit concerning the traffic stop, we find that there was sufficient other information provided by the confidential informant, which we discuss, *infra,* to establish probable cause for issuance of the warrant.

## B. Probable Cause Established by Confidential Informant

In this claim, the appellant also contends that the affidavit relied upon by the State for issuance of the search warrant lacked probable cause in that it was based on "information of unproven confidential informant [CI] consisted [*sic* ] of surmise and conjecture." It is difficult, at best, to

decipher exactly the complaint of the appellant, other than his general contention that the information provided by the CI was insufficient to establish probable cause in that there was no showing that he had been reliable in the past such that any information provided by him in the supporting affidavit of Detective Slaybaugh should have been ignored as being nothing more than mere "surmise and conjecture," unworthy of belief.

 We would first note that the appellant does not cite any authority for his claim nor any reason for not doing so, in violation of Rule 84.04(d)(5). As such, to avoid becoming an advocate on his behalf, we are justified in refusing to review the merits of his claim. *State v. Bradley*, 8 S.W.3d 905, 906 (Mo.App.2000). However, rather than punish the appellant for the shortcomings of his attorney in preparing his brief and given the fact that this is a criminal case involving the appellant's liberty, we will consider whether to grant plain error review under Rule 30.20, discussed, *supra*. *Rehberg*, 919 S.W.2d at 548. "[A]n affidavit which relies on hearsay is sufficient as long as there is a substantial basis for crediting the hearsay. Hearsay in an affidavit may be found reliable when it is based on personal observation and it is corroborated." *State v. Dawson*, 985 S.W.2d 941, 949–50 (Mo.App.1999) (citations omitted). "If the hearsay can be properly credited, there is no need to show the informant was reliable." *Williams*, 9 S.W.3d at 14. The determination of whether the hearsay is creditable requires necessarily that the issuing magistrate determine the "'veracity' and 'basis of knowledge' of [the] persons supplying [the] hearsay information." *Dawson*, 985 S.W.2d at 949. "The concepts of 'veracity,' 'reliability,' and 'basis of knowledge' are relevant considerations but they are not entirely separate and independent requirements to be rigidly applied in every case." *Hill*, 854 S.W.2d at 817 (Mo.App.1993) (*citing Gates*, 462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543). "Corroboration

from other witnesses and from independent observations of police officers creates a substantial basis for crediting the hearsay statements in an affidavit." *Dawson*, 985 S.W.2d at 950; *see also Williams*, 9 S.W.3d at 14. For purposes of assessing probable cause, it is sufficient that "[c]orroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." *State v. Bible*, 750 S.W.2d 676, 680 (Mo. App.1988) (*quoting Gates*, 462 U.S. at 244– 45, 103 S.Ct. at 2335, 76 L.Ed.2d at 552) (internal quotes omitted). When all the information obtained through surveillance is consistent with that supplied by an informant, it reduces the chance that he or she is lying. *State v. Taylor*, 889 S.W.2d 124, 128 (Mo.App.1994). However, "'[c]orroboration of *part* of the information furnished by the informant is sufficient to support a finding of probable cause to issue a search warrant.'" *State v. Meyers*, 992 S.W.2d 246, 249 (Mo.App.1999) (*quoting State v. Thomas*, 737 S.W.2d 247, 249 (Mo.App.1987)). The more detailed the information supplied by the confidential informant, the more it "'bears the unmistakable marks of firsthand observation,'" thereby supporting probable cause to issue a search warrant. *State v. Cornelius*, 1 S.W.3d 603, 607 (Mo.App.1999) (*quoting Berry*, 801 S.W.2d at 67).

A review of the detective's affidavit filed in support of the search warrant reveals that the State's CI provided the police with extensive and detailed information concerning the appellant's methamphetamine operation. In this regard, he provided the police not only with the times and location where the manufacturing was occurring, but that the appellant had been burned seriously while cooking methamphetamine on a prior occasion, requiring his hospitalization. He also advised the police of the chemicals being used by the appellant and the source for some of them; the weapons and surveillance systems that were contained in the house; the vehicle being driven by the appellant; and the

fact that the appellant had asked him to remove from the residence and safeguard some of the ephedrine while he was in the burn center. Much of this information was verified by the police, including the recovery of the barrels of ephedrine that the informant removed from the appellant's house. The police were able to confirm the appellant's identity, place of residence, and the description of his vehicle. They were also able to corroborate the fact that several of the individuals observed visiting the residence had significant involvement in manufacturing methamphetamine. Given the specificity of the information supplied by the CI and its corroboration, in large part, it was reasonable for the trial court to conclude that the CI had personal knowledge of the appellant and his residence. *See Meyers,* 992 S.W.2d at 248.

As a general proposition, "[e]ven cases where the sufficiency of the affidavit is marginal should be largely determined by the preference to be accorded to warrants." *Hill,* 854 S.W.2d at 819 (*citing State v. Sheffield,* 821 S.W.2d 859, 862 (Mo.App.1991)). Being mindful of this proposition, we believe that the hearsay information provided by the CI in the affidavit filed by the State in support of the search warrant was sufficiently verified so as to allow the issuing court to "have made a practical, common-sense decision that there existed a fair probability" that illegal activity would be found at 249 North Evanston. *Berry,* 801 S.W.2d at 67.

For the reasons stated, we find that the application for the search warrant of the appellant's residence and the affidavit filed in support thereof were sufficient to establish probable cause for the issuance of the warrant such that the trial court did not plainly err in overruling the appellant's pretrial motion to suppress.

Point denied.

### III.

In Point III, the appellant claims that the trial court erred in overruling his pre-trial motion for disclosure of the identity of the State's confidential informant because it violated his right to adequately prepare a defense and to confront his accuser. We disagree.

"Whether a defendant can have a fair trial without disclosure of the identity of an informant rests within the sound discretion of the trial court." *State v. Myers,* 997 S.W.2d 26, 34 (Mo.App. 1999). "In reviewing a trial court's ruling on this issue, the appellate court must balance the relevance and importance of disclosure to the defense against the State's need for nondisclosure." *State v. Rollie,* 962 S.W.2d 412, 415 (Mo.App.1998). In doing so, "the particular circumstances of a case must be considered including the crime charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors." *Id.* at 415–16. "The burden is upon the defendant to develop a record showing the need for disclosure." *Myers,* 997 S.W.2d at 34.

"Communications made by informants to government officials are generally privileged and need not be disclosed." *Rollie,* 962 S.W.2d at 415. The privilege was formulated to encourage citizens to notify officials of crimes, thus promoting effective law enforcement. *Myers,* 997 S.W.2d at 34; *Rollie,* 962 S.W.2d at 415. "The privilege is designed for the protection of the public interest and not for the protection of the informant." *State v. McElroy,* 894 S.W.2d 180, 186 (Mo.App. 1995). Concepts of fundamental fairness may create exceptions to the privilege rule in circumstances in which disclosure of the informant's identity is essential to enable an accused to adequately establish a defense. *Myers,* 997 S.W.2d at 34; *Rollie,* 962 S.W.2d at 415.

A crucial factor to be considered in determining whether disclosure of the informant's identity may be required is the role played by the informant in the criminal activity. 'When there is active informant participation plus other fac-

tors, such as mistaken identity, contradictory testimony, or a denial of the accusation, or when the informant is the sole witness to the crime charged, then the identity of the informant may be required for purposes of fairness.' Other instances where disclosure of the identity of the informant may be required are when the informant is the sole participant, other than the accused, in the drug transaction charged or the informant is the only witness in a position to be called on behalf of the defense.

*Rollie*, 962 S.W.2d at 416.

 The appellant contends that the disclosure of the identity of the CI was necessary in that the CI was an active participant in the manufacturing of the methamphetamine. To carry his burden of developing a record showing the necessity for disclosure, "bare assertions or speculative or conclusory allegations" by counsel were insufficient. *State v. Coleman*, 954 S.W.2d 1, 6 (Mo.App.1997). "Arguments and statements of counsel are not evidence of the facts presented." *Id.* The defendant is required "to show, either by demonstrating weakness in the State's case or by development of a defense, that disclosure was needed." *Id.*

 Here, the appellant did not make a record sufficient to support his motion for disclosure of the identity of the CI. The only support for his motion was the argument of counsel, contending that the CI "may have been" an active participant in the crime of which he was charged, citing the information provided by the CI in the search warrant affidavit that he or she, when asked by the appellant, cleaned up the methamphetamine operation at the appellant's residence while he was in the hospital recovering from being burned. However, as the State contends, this activity by the CI was not a part of the subsequent manufacturing operation, which resulted in the charge against the appellant. In this regard, it was the defense's theory of the case that someone, without the appellant's consent or knowledge, entered his residence, and set up and operated a methamphetamine laboratory in the several hours between the time he left the house the day of his traffic stop and arrest, and the search of his residence. As to this operation, other than bare assertions by defense counsel that because of the CI's willingness to clean up the previous operation, he may have been involved in the subsequent operation, the appellant made no record showing that the CI was an active participant therein. As to the other factors deemed relevant in determining the necessity of disclosure: mistaken identity; contradictory testimony; a denial of the accusation, or the informant was the sole witness to the crime, there was no record or argument made by the appellant.

Because the appellant failed to carry his burden in making a record showing the necessity of disclosure by the State of the identity of the CI, we cannot convict the trial court of error in overruling the appellant's pretrial motion for disclosure of the State's CI. *Myers*, 997 S.W.2d at 34.

Point denied.

**IV.**

In Point IV, the appellant claims that the trial court erred in allowing the endorsement of an additional witness by the State less than a week before trial without granting him a continuance because in doing so, his trial counsel, in violation of due process, was denied an opportunity to adequately prepare for trial. Specifically, he complains of the late endorsement by the State of Detective Jeff Seever, an investigator for the Jackson County Drug Task Force, who was called by the State as an expert witness at trial to testify about the process for manufacturing methamphetamine.

 "Under Rule 23.01(f), the court has discretion to permit the late endorsement of any material witness. Absent an abuse of discretion or prejudice to the appellant, the conviction should not be

overturned because a witness was endorsed on the day of trial." *State v. Stamps*, 865 S.W.2d 393, 397 (Mo.App. 1993) (citation omitted); *see also Moss v. State*, 10 S.W.3d 508, 515 (Mo. *banc* 2000).

Rule 23.01(f)[3] provides:

The names and addresses of all material witnesses for the prosecution except rebuttal witnesses and witnesses who will appear upon the trial for the production or identification of public records shall be listed. Additional witnesses may be listed at any time after notice to the defendant upon order of the court.

In considering whether a trial court abused its discretion in permitting the late endorsement of additional witnesses pursuant to this rule, the appellate court is to consider:

(1) [w]hether the defendant waived the objection; (2)[w]hether the state intended surprise or acted deceptively or in bad faith, with the intention to disadvantage the defendant; (3)[w]hether in fact defendant was surprised and suffered any disadvantage; and (4)[w]hether the type of testimony given might readily have been contemplated.

*Moss*, 10 S.W.3d at 515. "The main consideration is whether the late disclosure of witnesses resulted in fundamental unfairness or prejudice to substantial rights of the defendant." *State v. Thomas*, 965 S.W.2d 396, 399 (Mo.App.1998) (citation omitted).

There is nothing in the record to indicate that the State, by its late endorsement, intended to surprise the defense, or acted deceptively or in bad faith intending to disadvantage it. As to whether the appellant was, in fact, surprised and disadvantaged by the late endorsement of Detective Seever and whether his testimony might have been readily contemplated by the appellant, the parties agree that appellant's counsel was orally notified by the

State, approximately six days before trial, that it intended to call Detective Seever as an expert witness to testify generally about the process of manufacturing methamphetamine. It was at this time that the appellant filed his pretrial motion for a continuance in anticipation of the trial court's allowing the late endorsement. However, the appellant contends that such prior notice was insufficient to allow his counsel time to investigate the witness and schedule his deposition, if deemed necessary, requiring the trial court to grant his motion for continuance.

The decision to grant or deny a continuance is a matter of trial court discretion. *Thomas*, 965 S.W.2d at 400. To demonstrate prejudice on appeal, a very strong showing is required to prove that the trial court abused its discretion by denying the motion to grant the continuance requested. *State v. Crahan*, 747 S.W.2d 721, 722 (Mo.App.1988) (*citing State v. Cuckovich*, 485 S.W.2d 16, 21–22 (Mo. *banc* 1972)). The party requesting the continuance has the burden of showing that prejudice resulted from such denial. *Id.* (*citing State v. Nave*, 694 S.W.2d 729, 735 (Mo. *banc* 1985)).

Here, as to whether he suffered prejudice from the denial of his motion for a continuance, the appellant alleges that further time would have aided generally the preparation of his defense by allowing him time to conduct an investigation as to what Detective Seever knew and what could reasonably be expected as to his testimony. We fail to see how any further investigation into Detective Seever's being called as a witness would have aided the appellant's defense. As discussed, *supra*, the appellant readily admitted at trial that he was not contesting the fact that a methamphetamine laboratory was located at his residence, but only his involvement in its operation. As such, we fail to see how

---

**3.** All rule references are to the Missouri Rules of Criminal Procedure (1999), unless otherwise indicated.

further time to investigate and prepare for the trial testimony of Detective Seever, as to how a methamphetamine operation works, would have in any way aided the appellant's defense such that the trial court's failure to grant the appellant a continuance prejudiced him. As such, we find that the trial court did not abuse its discretion in denying the appellant's pre-trial motion for continuance due to the late endorsement of the witness.

Point denied.

### Conclusion

The circuit court's judgment of the appellant's jury conviction for manufacturing a controlled substance, § 195.211, is affirmed.

LOWENSTEIN and ELLIS, JJ., concur.